THE STATE OF MONTANA EX REL. HAROLD J. PINSONE-
AULT, COUNTY ATTORNEY IN AND FOR THE COUNTY OF MIS-
SOULA, RELATOR, *v.* THE DISTRICT COURT OF THE FOURTH
JUDICIAL DISTRICT OF THE STATE OF MONTANA, IN AND FOR
THE COUNTY OF MISSOULA, AND THE HONORABLE E. GARD-
NER BROWNLEE, DISTRICT JUDGE, RESPONDENTS.

No. 10927
Submitted March 18, 1965. Decided March 24, 1965.
400 P.2d 269.

234

Michael G. McLatchy, Deputy County Atty. (argued), Missoula, for relator.

Anthony F. Keast (argued), Missoula, for respondents.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an original proceeding filed by the county attorney of Missoula County against the district court of the fourth judicial district, and the judge thereof, the Honorable E. Gardner Brownlee. The petition sought a writ of certiorari or other appropriate writ.

We issued an order to show cause returnable before this court. In our order to show cause, we directed the district judge to set aside his order dismissing an information against two defendants, Dale Howard Smith and Loy Garth Olsen, which information charged assault in the second degree, a felony, or to appear before this court to show cause why he had not done so. Service of our order to show cause was directed to the defendants and their counsel as well as to the district judge. Upon the return day, answers and returns were filed by the district judge, and also by the defendants. Oral argument was had with counsel for defendants appearing in their behalf as well as for the district judge. We have

before us the district court file as well as a transcript of proceedings in the justice court upon a preliminary hearing had.

The criminal charge against the two defendants shows a chronology of events as follows: One Dan R. Bieri was beaten by three assailants on August 11, 1964. On August 12 or 13, the county attorney was notified. An investigation ensued. On August 20, 1964, a complaint charging second degree assault against two defendants was filed in justice court. On the same date the defendants were brought before the justice court and asked for twenty-four hours to obtain counsel. On August 21, represented by counsel, the defendants requested and were granted a preliminary hearing. Meantime, a third assailant, a sixteen year old youth, was taken into the juvenile court.

On August 31, a preliminary hearing was had before the justice of peace. Two witnesses, Bieri, the complaining witness and the investigating police officer were examined and cross-examined with a transcript made.

On the basis of the testimony, the justice of peace found probable cause and bound the cause over to the district court. On September 21, 1964, an information was filed in district court charging second degree assault.

Judge Glore assumed jurisdiction, but then disqualified himself, and called in Judge Green who assumed jurisdiction on September 25. On the same date, the defendants and their counsel appeared and an arraignment was set for September 28, 1964.

On September 28, Judge Green ordered a transcript of the preliminary examination filed and continued the arraignment to October 1, 1964.

On October 1, the defendants filed separate demurrers to the information. Counsel was granted ten days for briefs and the State five days. The arraignment was continued until October 22. Unexplained is the fact that defendants' brief was

not filed until October 23. State's brief was filed October 28 and a reply brief by defendants on November 4. At any rate the court, Judge Green, overruled the demurrers on November 6, 1964. On the same day both defendants were arraigned and plead "not guilty." It being too late for the Fall Term, the setting of a jury trial was ordered during the next jury term and the defendants released from custody on bail. Counsel advised the court that five days before November 24, defendants would file motions to suppress evidence and motions for separate trials. No such motions were filed.

Thereafter, we are informed and it is not disputed, Judge Glore scheduled the case for trial on February 1, 1965. The minute entry of January 29, 1965, then shows that Judge E. Gardner Brownlee, the respondent here, assumed jurisdiction. We are informed by counsel for both sides that Judge Green had disqualified himself and requested Judge Brownlee to assume jurisdiction.

On January 28, 1965, counsel for defendants filed a motion in five parts, a motion to withdraw defendants' pleas of not guilty, a motion to dismiss the actions, what is called a motion to produce, a motion to suppress, and motion for separate trials.

On January 29, this being but three days prior to the date set for trial (and more than six months after representation by counsel) Judge Brownlee heard the motions. He allowed the "not guilty" pleas to be withdrawn, and then granted the order dismissing the information "on the grounds that the transcript of the testimony taken at the preliminary hearing did not show probable cause to believe a felony had been committed by said defendants."

This petition followed.

We see from the events previously set forth that Judge Green ruled on the demurrer and found the information to have been proper in form. This the return concedes. The return, and an examination of the testimony taken both at the

preliminary hearing and the hearing before Judge Brownlee, reveals that Judge Brownlee re-examined the same matters that had been ruled upon previously by Judge Green. To be sure that this is so, we have reviewed the demurrer filed on October 1. That demurrer specifically called attention as a ground that the transcript taken at the preliminary hearing "[failed] to charge and accordingly confirm the public offense of assault in the second degree, a felony." This is, of course, the same as asserting a lack of "probable cause," and we find this is borne out by the briefs on file.

On oral argument, counsel for respondents was asked if this was not the identical challenge contained in the motion to dismiss before Judge Brownlee. *He conceded, as he must have, that it was.*

Thus here, after demurrer, arraignment and the time for trial approaches, a new judge is asked to and does overrule in effect the previous judge. Probable cause had been found by the justice of the peace. For aught that appears it was found again by Judge Green in that he overruled the demurrer after the same matters were presented. Now, still a third judge reviews the record.

From the record of the hearing before Judge Brownlee the following partial exchange appears:

"THE COURT: Well, Mr. McLatchy, I think a Court has an obligation, I think our profession has an obligation, and to be very frank with you, I have read your transcript very, very, carefully. The only injuries were a large blank on the head; I presume that could be 'bump' or something. 'Skin gone through my scalp.' I don't know what that means. 'In the left temple the skin was taken off about 1½ inches wide from my ear to my eye. My face was bruised up. My eye was black. My right arm stiff. Both elbows were skinned. I had sore ribs. X-rays were taken of my ribs on the left side and of my skull. My left leg was bruised and scabbed.'

"This does not impress me as being grievous, serious bodily injury.

"MR. McLATCHY: I submit—

"THE COURT: May well have been the results of a fist fight or something, but I don't think any court in the United States should ever send somebody to a state prison for getting involved in a fist fight.

"MR. McLATCHY: Sir, this is not a fist fight.

"THE COURT: I am not saying—

"MR. McLATCHY: This was a very unlawful act.

"THE COURT: I am talking about the injuries. Probable cause that makes this a second degree assault is the grievous, the serious, the aggravated injuries; I cannot see them in this transcript. I cannot see that it's a proper case to be filed here, and I cannot see that it's necessary to waste taxpayer's money bringing a jury here, and therefore the action is, as against both defendants, dismissed.

"MR. McLATCHY: I give notice to this Court that I intend to appeal this case to the Supreme Court.

"THE COURT: I don't think you have to give notice.

"MR. KEAST: Could I have the bonds exonerated?

"THE COURT: Bonds are exonerated. Mr. McLatchy! I would advise you to hold your temper and stay in the courtroom until court is recessed, otherwise you might find yourself in contempt of court.

"MR. McLATCHY: I am returning a pencil, sir.

"THE COURT: Your actions are extremely contemptuous, and any time you perform like that I will have to find you in contempt of court. As a matter of fact, I think your actions in bringing this lawsuit were contemptuous, especially in view of the way that your office handled a member of the bar who was accused of breaking some ribs. I don't think that it's your determination to say one man should be guilty of disturbing the peace for a more aggravated assault than your own evidence shows here.

"Now, I think that justice is what you and I and Mr. Keast are here to find and determine; we are supposed to be seeking the truth. We are supposed to be seeing that the laws are obeyed and followed. I can't see it in this case, and as a citizen not interested in the other one, I couldn't see it in the other case.

"So these are my feelings. Now, if you want to say something, I will give you the opportunity by recessing court."

We have examined, too, the entire record of proceedings, keeping in mind that we are dealing with "probable cause" sufficient to move the discretion of a committing magistrate.

█ Probable cause was discussed in State ex rel. Wong You v. District Court, 106 Mont. 347, 352, 78 P.2d 353, 355, wherein it is said:

"In State ex rel. Neville v. Mullen, supra [63 Mont. 50, 207 P. 634], this court said: 'Reverting to our premise that the sheriff may arrest without a warrant upon such state of facts as would justify the issuance of a warrant, it becomes necessary to consider what circumstances will justify the issuance of a warrant, and the authorities are unanimous in holding that there must be probable cause. The terms "probable cause" are variously defined, but an analysis of the definitions will disclose that the difference, if any, is in the mode of expression, rather than in the substance. "Probable cause is the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of." Burt v. Smith, 181 N.Y. 1, 73 N.E. 495, 2 Ann.Cas. 576. "Probable cause [for a criminal prosecution] is, in effect, the concurrence of the belief of guilt with the existence of facts and circumstances reasonably warranting the belief." Runo v. Williams, 162 Cal. 444, 122 P. 1082. It is not essential to probable cause "for an arrest * * * that the accuser believe that he has sufficient evidence to procure a conviction." Michael v. Matson, 81 Kan. 360, 105 P. 537, L.R.A. 1915D, 1. "Probable cause does not de-

pend on the actual state of the case in point of fact, for there may be probable cause for commencing a criminal prosecution against a party, although subsequent developments may show his absolute innocence." Mundal v. Minneapolis & St. L. R. Co., 92 Minn. 26, 99 N.W. 273 [100 N.W. 363]. "The expression 'probable cause,' as used in the federal Constitution, referring to the issuance of warrants, means that there is a probability that a crime has been committed by the person named in the warrant." Ex parte Heacock, 8 Cal.App. 420, 97 P. 77'."

The foregoing discussion has to do with probable cause sufficient for an arrest, but the same reasoning holds for "probable cause" or "sufficient cause" as used in R.C.M.1947, § 94-6114. In the case of In re Jones, 46 Mont. 122, 126, 126 P. 929, 930, this court said: ''The county attorney was only required to submit proof sufficient to show probable cause to believe the defendant guilty of the charge."

In State ex rel. Harrison v. District Court, 135 Mont. 365, 340 P.2d 544, a somewhat similar situation occurred. We can only surmise from the exchange between Judge Brownlee and the deputy county attorney that Judge Brownlee was critical of the prosecutor's handling of at least two other cases. This suggests our discussion in the case of State ex rel. Harrison, supra at p. 369 of 135 Mont., p. 546 of 340 P.2d, where we said:

"It appeared during oral arguments that a series of acquittals and dismissals had occurred in the district court, which had provoked the district judge to require a further showing than customary before he would allow the filing of felony informations. That he is concerned for costs to taxpayers of unwarranted and poorly prepared jury trials, as well as concerned for the rights of defendants, is understandable and laudable * * *." and further:

"Under section 94-4911, the court may: (1) Grant leave, or (2) require examination. The latter presupposes the right on the examination to grant or deny the application. Nowhere is

any provision made for findings of fact and conclusions of law. The section obviously contemplates a requirement of sufficient evidence to move the court's discretion. *But, it does not contemplate an unlimited discretion or a finality of decision that discharges or excuses a defendant from any further proceedings.*" Emphasis supplied.

█ We think this reasoning appropriate here. Circumstances might exist whereby a district judge might review probable cause, such is not the situation here. Granting, but not holding that a district judge might under some circumstances review a committing magistrate's finding of probable cause, the discretion is not unlimited.

Referring back to our quotation of the exchange between the district judge and the deputy county attorney, the statement of the trial court that "Your actions in bringing this lawsuit were contemptuous, especially in view of the way that your office handled a member of the bar who was accused of breaking some ribs," can only be determined as an outburst from a "provoked judge" as that term was used in the State ex rel. Harrison case, previously quoted.

█ The mere recital of the injuries shows what might be grievous bodily injuries sufficient to establish probable cause that a second degree assault had been committed under R.C.M. 1947, § 94-602. While the injuries may not have been described with medical terminology, the proof showed a doctor had examined the defendant and presumably the doctor would testify at the trial, since he was endorsed as a state witness.

█ Just what the trial of the cause will reveal is not certain, but if it develops that a sufficient case of second degree assault is not proven, then, in that event, the trial court may, and often does, instruct the jury on a lesser degree of the crime if there be proof beyond a reasonable doubt.

█ We think here that further discussion and comment is not necessary to demonstrate that the trial judge abused his discretion in ordering the information dismissed. Accordingly

the order of the trial court is set aside and the matter remanded for proceedings for bail if it be deemed advisable, and it is ordered that the pleas of not guilty are reinstated.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES JOHN CONWAY HARRISON and ADAIR concur.