No. 12797

IN THE SUPREME COURT OF THE STATE OF MONTANA

1974

---

THE STATE OF MONTANA, ex rel.
DUNCAN PEDER McKENZIE, JR.

Petitioner,

-vs-

THE DISTRICT COURT OF THE NINTH JUDICIAL
DISTRICT Of the State of Montana, in and
for the County of Pondera and the HON.
R. D. McPHILLIPS, Judge thereof,

Respondent.

---

ORIGINAL PROCEEDING:

For Petitioner:

Barney Reagan argued, Cut Bank, Montana
Charles L. Jacobson argued, Conrad, Montana

For Respondent:

Hon. Robert L. Woodahl, Attorney General, Helena,
Montana
Thomas J. Beers argued, Assistant Attorney General,
Helena, Montana
David H. Nelson argued, County Attorney, Conrad, Montana
Douglas L. Anderson, Jr. argued, Special Prosecutor,
Conrad, Montana

---

Submitted: July 8, 1974

Decided: AUG - 6 1974

Filed: AUG - 6 1974

_Thomas J. Kearney_
Clerk

Honorable Gordon Bennett, District Judge, sitting in place of Mr. Justice Gene B. Daly, delivered the Opinion of the Court.

This is an original proceeding for a writ of supervisory control in which the relator seeks an order directing the district court to set aside its leave to file a second amended information; to strike a plea of not guilty entered by the court on behalf of the relator; to require the district court to limit any information to be filed to such charge or charges as to which probable cause has been shown, or to release the relator if no probable cause is shown, and to require the district court to permit the filing of only such an information as will meet the requirements of due process by alleging a crime or crimes in a manner which will permit the relator to intelligently enter a plea. Counsel for the relator was heard ex parte, whereupon we ordered and held an adversary hearing at which relator, respondent and the attorney general were heard.

Relator is defendant in the case of State of Montana v. Duncan McKenzie, filed in the ninth judicial district court in and for Pondera County. In a second amended information he is charged under the Montana Criminal Code of 1973 with seven counts of deliberate homicide, ten counts of aggravated kidnapping, three counts of aggravated assault and two counts of sexual intercourse without consent. All such acts are alleged to have been committed against one Lana Harding on or about January 21, 1974.

An original information charging deliberate homicide only was filed upon leave of court on January 24, 1974. On February 15, 1974, relator moved for dismissal of the information on grounds, inter alia, that it purported to plead in the alternative and thereby deprived the defendant of knowledge as to the elements of the offense charged. The county attorney on February 19, 1974, moved for leave to file an amended information charging two counts

of deliberate homicide, aggravated kidnapping, sexual intercourse without consent and aggravated assault. On March 15, 1974, relator filed a number of motions directed at the amended complaint, among them being a motion for an order requiring the state " * * * to separately state and number each and every charge of the Amended Information including each and every charge which is intended to be covered as a possible offense * * *."

Before any plea was taken on the original information and before any action was taken by the court on the proposed amended information or any of the objections to the original information or to the filing of the second information, the county attorney, on May 20, 1974, moved for leave of the court to file a second amended information. Relator filed his objections to the filing of this information; argument and briefing was had thereon and on May 28, 1974 the court granted leave to file the second amended information, which is the information under review here, and the information was filed that day. On May 30, 1974, the relator refusing to enter a plea, the court entered a plea on his behalf of "not guilty" to all 22 counts.

The first question to be considered is as to the form of the motion for leave to file the second amended information. Relator questions whether it complies with this sentence of section 95-1301, R.C.M. 1947: "the application must be by affidavit supported by such evidence as the judge may require." While no affidavit, labeled as such, was filed, the motion itself declares that it is made on the oath of the county attorney, it is signed by him and both the subscription and the oath are certified to by the clerk of the court. There is no evidence contradicting or raising any question as to the oath or the signature of either the county attorney or the clerk of court. We find that the motion is sufficient as an affidavit within the meaning of the cited section,

while at the same time conceding that the better practice would have been to file the motion supported by a separate affidavit.

Relator also argues, as to form, that the motion is a mere declaration or conclusion of the county attorney that he finds probable cause that the several crimes alleged have been committed and is therefore insufficient under our ruling in State ex rel. Bell v. Dist. Court, 157 Mont. 35, 38, 482 P.2d 557.

In pertinent part, the motion states:

"This motion is made for the reason that the said County Attorney has investigated the facts and circumstances concerning the commission of the alleged offenses and is of the belief that the said Defendant, DUNCAN McKENZIE, committed the said crimes at the time and place aforesaid. That the said County Attorney has personally interviewed and/or taken statements from the following named persons as shown by Exhibit "A" attached hereto and hereby made a part of this Motion: And from said interviews and statements the said County Attorney has reason to believe that:"

Following this statement is a recitation four and one-half pages long setting forth purported facts discovered by the county attorney in an apparently lengthy investigation involving 58 listed witnesses and an exhaustive autopsy report, a copy of which is attached. While the conclusions stated are those of the county attorney, it is patent from the whole tenor of the motion that the county attorney was not seeking leave to file the information on the basis of his conclusions, but on the basis of the facts he presented. This distinguishes this case from Bell where this Court found nothing in the record to show that the state had sufficient facts to establish probable cause. Here, the county attorney presented a large array of purported facts in acceptable affidavit form. Nothing further is required, as to form, by section 95-1301. There is no requirement, as relator urged in argument, that there be a supporting affidavit of a witness having direct knowledge of the alleged crime. State v. Dunn, 155 Mont.

- 4 -

319, 472 P.2d 288.

As to substance, relator argues that the facts presented in the motion were insufficient, even if believed by the judge, to establish probable cause to believe the crimes alleged in the information were committed or committed by him. The motion included the following purported facts.

The victim was an unmarried 23 year old female school-teacher who lived and taught at a country school in Pondera County and she enjoyed the respect of the community.

She was last seen alive in the late afternoon hours of January 21, 1974, in Conrad. Her partially clad body was discovered January 23, 1974, approximately five miles northwest of her school.

An autopsy performed by a licensed physician concluded that the victim died of traumatic injury to the head and that head injuries included scalp lacerations, skull fracture, brain contusion and laceration, exsanguination from external hemorrhage, and abrasive contusions of the face. He also reported multiple abrasions and contusions to trunk and extremities, recent asphyxial strangulation from rope about the neck and evidence of recent sexual assault consisting of vaginal laceration of the hymenal area and human spermatazoa present in vagina and pubic hair. He also indicated a time period of more than one hour elapsed between the first injuries to the victim and the time she died.

On the evening of January 21, 1974, relator left the place of his employment at about 6:30 or 7:00 p.m. and his black Dodge pickup was observed at about 7:00 p.m. in the vicinity of the teacherage where the victim resided. A resident of the area assisted him in starting his stalled pickup at about 8:00 to 8:30 p.m., at a location approximately 150 feet from the teacherage. Relator's home is south of the teacherage. After having been assisted in starting his vehicle relator turned east and his pickup was observed

going north at about 8:30 p.m. in the direction of the site where the body was found.

The bed, springs and manifold of relator's pickup were stained with blood. The blood on the manifold was determined to be of the same type as the victim's. Hair found in and about the pickup was determined to have the same characteristics as the victim's. At a point near the place where the relator was assisted in starting his pickup was found a pool of blood of the victim's type and the victim's wrist watch.

Relator had made statements to his co-workers in regard to his sexual prowess with school teachers and he had made specific reference to the victim. The teacherage was on the road between where the relator worked and where he lived and he was in exclusive possession of the pickup.

Seminal secretions found in the pubic hair of the victim were connected to the blood type of the relator.

Examination of the teacherage and the yard surrounding it indicated the victim had been dragged across the floor and the yard, through a fence and to the point where the blood pool and watch had been found in the near vicinity of where relator's pickup had been stalled.

From these purported facts, and others, the judge found probable cause to believe the relator had committed the crimes alleged in the proposed information and granted leave to file it.

In 1903, this Court in State v. Martin, 29 Mont. 273, 275, laid down some ground rules for consideration of the validity of challenged informations:

> "Obtaining leave to file an information without
> a previous examination of the accused before a
> committing magistrate is not a mere perfunctory
> matter which should be granted as of course, but
> rests in the sound discretion of the district
> judge, upon the showing made to him at the time
> * * *.

"An abuse of discretion materially prejudicing a
substantial right of the accused would be ground
for reversal * * * the appellate court cannot
presume that the trial court exceeded its authority
or abused its discretion."

In State ex rel. Juhl v. District Court, 107 Mont. 309,

316, 84 P.2d 979, we held:

"* * * there must be sufficient facts and
information presented to the court to move the
discretion of the court * * *."

The Criminal Law Commission appended this comment to section

95-1301, R.C.M. 1947:  " * * * The application must be complete

in itself, and contain such salient facts as will allow the dis-

trict judge to make an independent determination that an offense

has been committed. * * *"

Section 95-1301(a), R.C.M. 1947, requires the judge to

find "probable cause" to believe that an offense has been committed

as a condition for granting leave to file an information.  The term

"probable cause" was discussed in State ex rel. Pinsoneault v.

Dist. Ct., 145 Mont. 233, 239-240, 400 P.2d 269, where the Court

adopted several definitions, including:

" * * * knowledge of facts, actual or apparent,
strong enough to justify a reasonable man in the
belief that he has lawful grounds for prosecuting
the defendant * * *"

and

" * * * the concurrence of the belief of guilt with
the existence of facts and circumstances reasonably
warranting the belief."

Following these principles, we find the purported facts

presented in the county attorney's motion were more than sufficient

to properly and adequately move the court's discretion in finding

probable cause to believe that the crimes of deliberate homicide

(94-5-102), aggravated assault (94-5-202), sexual intercourse

without consent (94-5-503) and aggravated kidnapping (94-5-303),

all of the Criminal Code of 1973, had been committed by the relator

and that it therefore was authorized to grant leave to file an

- 7 -

information charging any or all of these crimes.

The next question is whether all of these crimes could or should have been included in a single information. The joinder provisions of section 95-1504, R.C.M. 1947, are highly flexible. Part (a) thereof permits an information to charge two or more different offenses connected together in their commission, different statements of the same offense, or two or more different offenses of the same class of crime under separate counts. This 1967 statute is reinforced by the 1973 statute, section 95-1711(2), R.C.M. 1947, which provides: " * * * When the same transaction may establish the commission of more than one offense, a person charged with such conduct may be prosecuted for each such offense. * * *" The prosecution is not required to elect between different offenses or counts and there may be a conviction of any number of offenses charged, section 95-1504(a), R.C.M. 1947. But where the offenses arise from the "same transaction" the number of convictions that can be had on them is limited by section 95-1711(2), R.C.M. 1947. On the other hand, if a number of crimes arise from the "same transaction", as defined in that statute, the prosecution is bound to prosecute them all at one time, insofar as he can, at the risk of running into a maze of double jeopardy problems set forth in part (3) of the above statute.

In view of the above provisions, we see no bar to the charging of all four categories of crime set forth in the information. Inasmuch as the alleged crimes all arise from the same transaction, the prosecution is well advised to charge all of them as it may be its only opportunity to do so. Upon the trial of the case, the court may be required to limit by instruction the number and kind of verdicts the jury may return on the basis of the evidence presented and on the limitations of section 95-1711(2), R.C.M. 1947, but that is of no concern here.

We turn then to the manner in which these crimes should be charged.

The purpose of an information is to inform the defendant of what he is charged, nothing more, nothing less. Section 95-1503, R.C.M. 1947, requires a statement of the name of the offense, the statute violated, the time and place, the name of the accused and " * * * the facts constituting the offense in ordinary and concise language and in such manner as to enable a person of common understanding to know what is intended." No bill of particulars is called for or permitted, nor is a statement of all possible legal theories the prosecutor intends to pursue. It is not the function of the information to anticipate or suggest instructions to the jury, to argue the case or to influence either public opinion or the jury. It is a notice device, not a discovery device.

The information in this case includes seven counts of deliberate homicide. The first count charges purposely and knowingly causing the death of the victim. The second count charges purposely and knowingly causing the death of the victim by means of torture. The third count charges purposely and knowingly causing the death of the victim by lying in wait. The fourth count charges purposely and knowingly causing the death of the victim while committing the crime of sexual intercourse without consent. The fifth count charges purposely and knowingly causing the death of the victim while committing the crime of aggravated assault causing serious bodily injury. The sixth count charges purposely and knowingly causing the death of the victim while committing the crime of aggravated assault causing bodily injury by use of a weapon, namely a rope. The seventh count charges purposely and knowingly causing the death of the victim while committing the crime of aggravated assault causing bodily injury by use of a weapon, namely a heavy object.

We believe these seven counts of deliberate homicide should be reduced to two, in accordance with the alleged facts and the statutory definition of the crime. The statute tells us there are two kinds of unmitigated deliberate homicide (94-5-102(1)). The first kind is committed when the offense is committed "purposely or knowingly". The second kind is committed when the offense is committed " * * * while the offender is engaged in or is an accomplice in the commission of, or an attempt to commit, or flight after committing or attempting to commit robbery, sexual intercourse without consent, arson, burglary, kidnapping, felonious escape or any other felony which involves the use or threat of physical force or violence against any individual". The first count should be similar to the first count in the present information; i.e. it should simply allege that the crime was committed "purposely and knowingly". The second count should allege alternatively that the crime was committed while the relator was engaged in other felonies. These could include aggravated assault, sexual intercourse without consent and aggravated kidnapping.

It is neither appropriate nor necessary to base separate counts on torture or lying in wait, counts 2 and 3. Section 94-5-105, Criminal Code of 1973, deals with sentencing and does not define a specific crime. If torture or lying in wait, or both, are alleged as part of the second count, the defendant is sufficiently notified of what the prosecution intends to prove. If justified by the evidence, the court may instruct on these two features and ask for a special verdict on them to assist in fixing the penalty.

So, too, with the special aggravated assault weapon counts, No.'s 6 and 7. Use of a weapon or weapons may be an appropriate specification under aggravated assault in the second deliberate homicide count, but it should not be elevated to the dignity of special count in this case. Again, it might become the subject

- 10 -

of an appropriate instruction, if justified by the evidence.

Aggravated kidnapping is set forth in ten counts in the information, counts 8 through 17, inclusive.

Six of them, counts 8, 9, 10, 13, 14 and 15, allege the purpose was to facilitate the commission of the crime of aggravated assault. The first three of these, counts 8, 9 and 10, allege secreting or holding, and the second three, counts 13, 14 and 15, allege the use of physical force. Counts 8 and 13 specify no particular implements, but 9 and 14 specify the use of a rope, and 10 and 15 specify the use of a heavy object.

Counts 11 and 16 allege the purpose was to facilitate commission of the crime of sexual intercourse without consent. Count 11 specifies secreting or holding and count 16 specifies the use of physical force. Count 12 alleges the victim was secreted or held with the purpose of inflicting bodily injury or terrorizing her, and count 17 alleges physical force was used for the same purpose or purposes.

We can find no rationale for this plethora of counts. Section 94-5-303(1) defines aggravated kidnapping:

> "(1)  A person commits the offense of aggravated kidnapping if he knowingly or purposely and without lawful authority restrains another person by either secreting or holding him in a place of isolation, or by using or threatening to use physical force, with any of the following purposes:
>
> "(a)  to hold for ransom or reward, or as a shield or hostage; or
>
> "(b)  to facilitate commission or any felony or flight thereafter; or
>
> "(c)  to inflict bodily injury on or to terrorize the victim or another; or
>
> "(d)  to interfere with the performance of any governmental or political function; or
>
> "(e)  to hold another in a condition of involuntary servitude."

The facts alleged in the prosecution's motion for leave to file

the information would seem to justify counts based on parts (b) and (c) of the statute. The count under part (b) could specify the felonies of aggravated assault and sexual intercourse without consent, in the alternative if appropriate, and describe the means, such as a rope, and methods, such as secreting, where necessary and appropriate. The second count, under part (c), could be set forth almost in the words of the statute without detailed specification. Once again, it seems that this would fulfill the notice requirement of an information. The defendant has available extensive discovery procedure to determine the details of the prosecution's case.

All three counts of aggravated assault, counts 18, 19 and 20, allege, in the words of the statute, purposely and knowingly causing serious bodily injury, and counts 19 and 20 specify use of a weapon, namely a rope and a heavy object, respectively. The statute, section 94-5-202(1), specifies four types of aggravated assault:

> "(1)  A person commits the offense of aggravated assault if he purposely or knowingly causes:
>
> "(a)  serious bodily injury to another; or
>
> "(b)  bodily injury to another with a weapon; or
>
> "(c)  reasonable apprehension of serious bodily injury in another by use of a weapon; or
>
> (d)  bodily injury to a peace officer."

It would seem sufficient to limit the counts of aggravated assault to two, based on parts (a) and (b) of the section, specifying alternatively the rope and the heavy object as the weapon in the count based on part (b).

Counts 21 and 22 allege sexual intercourse without consent. They are essentially the same except count 22 specifies bodily injury. The statute, section 94-5-503, defines a single crime. Subsection (1) provides:

> "A male person who knowingly has sexual inter-
> course without consent with a female not his
> spouse commits the offense of sexual inter-
> course without consent."

Subsection three increases the penalty in cases where the victim is less than 16 years old and the offender is three years older, or the victim is injured. A single count, based on the definition of the crime, would be adequate notice to the defendant in this case. The defendant is certainly on notice from all the other counts and the motion for leave to file the information that the prosecution intends to prove injury. If the court deems it necessary as an aid to sentencing, it may ask for a special verdict on whether injury was inflicted in the course of committing the sexual offense, if any such offense be proven.

In summation, it is our opinion that the crimes for which probable cause has been shown could be charged in a total of seven counts instead of twenty-two without loss of necessary notice to the relator and with considerable gain in comprehensibility to the trial jury.

Next, the relator complains the information cites several penalty provisions of the code, which he says are unnecessary, redundant and inflamatory. He is correct. We refer to citation of the following sections and subsections in the counts noted: 94-5-102(2), count 1; 94-5-105(1)(d), count 2; 94-5-105(1)(e), count 3; 94-5-303(2) and 94-5-304, counts 8, 9, 10, 11, 12, 13, 14, 15, 16 and 17; 94-5-202(2), counts 18, 19 and 20; 94-5-503(2), count 21, and 94-5-503(3), count 22.

Finally, the relator asks that the "not guilty" plea entered by the court on his behalf be stricken. It is sufficient to note that the court was required to do so under the provisions of section 95-1606(c), R.C.M. 1947, the relator having refused to enter a plea. The relator may change the plea at any time prior

- 13 -

to conviction if he so desires.

The cause is remanded to the district court for further proceedings consistent with this opinion.

_____
Hon. Gordon Bennett, District Judge, sitting in place of Mr. Justice Gene B. Daly.

We concur:

_____
Chief Justice

_____

_____
Justices

_____
Hon. Robert Boyd, District Judge sitting for Mr. Justice Wesley Castles.