No. 13085

IN THE SUPREME COURT OF THE STATE OF MONTANA

1975

---

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

JOHN MICHAEL MINER,

Defendant and Appellant.

---

Appeal from:  District Court of the Sixth Judicial District,
              Honorable C. B. Sande, Judge presiding.

Counsel of Record:

For Appellant:

James A. Tulley argued, Big Timber, Montana
O.J. Paulson, Big Timber, Montana

For Respondent:

Hon. Robert L. Woodahl, Attorney General, Helena,
Montana
Thomas A. Budewitz argued, Assistant Attorney
General, Helena, Montana
Kenneth R. Olson, County Attorney, Big Timber,
Montana

---

Submitted:  December 10, 1975

Decided:  FEB - 9 1976

Filed:

Thomas J. Kearney
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This is an appeal by defendant John Michael Miner from a judgment entered in the district court, Sweet Grass County, Hon. C. B. Sande, presiding. The judgment followed a jury verdict finding Miner guilty of burglary. Miner appeals.

On the night of September 7, 1974, Ullman Lumber Company in Big Timber, Montana was burglarized. Taken in the burglary were approximately $70 in cash and $1100 in checks written to Ullman Lumber Company. The testimony of witnesses indicates this chronology of events: Immediately before the burglary, Sheri Stief and Eileen Brannin, while "cruising the drag", spotted a man they later identified as defendant walking back and forth in front of Ullman Lumber Company.

Later four teenagers who were conversing in a car directly across the street from the lumber company saw someone inside the store whereupon one of the teenagers, Tim Rostad, left to call the police. While Rostad was absent, the other three teenagers continued to watch the store window, and one of the teenagers, Lila Fuller, saw someone inside the store. Later she identified defendant as the person inside the store.

At about this time, these same teenagers noted someone running through the store and decided to investigate more closely. Driving past the store, they saw two men run through the yard and jump the back fence. Later these teenagers while driving in the vicinity, saw a man walking down a side street, whom they later identified at trial as defendant.

Meanwhile, Tim Rostad had succeeded in alerting the police. Deputy Brannin while conducting a surveillance of the immediate vicinity, spotted a man walking down a side street that he later identified as defendant. After finishing his general surveillance, Deputy Brannin returned to Ullman's where Tim Rostad informed him

that a man matching the description of the person he had seen in Ullman's was in a telephone booth nearby. Upon being confronted by Deputy Brannin, this man identified himself as Gary Eugene Radi. At this time, Tim Rostad also identified Radi as the man he had seen inside the Ullman Lumber Company earlier.

A few days later the Sweet Grass County sheriff requested photographs of Radi and his known associates from the Billings police department. From the set of six photos received, witnesses thought the one photo of defendant might have been the man they saw, but they were not sure. Deputy Brannin did identify defendant as the man he had seen from this first set.

On September 11, 1974, a new set of photographs was received. This set contained two pictures each of defendant and Radi and one of another suspect. These photos showed defendant with longer hair and glasses, similar to his appearance at the time of arrest. Upon viewing the two sets of photos, along with miscellaneous photos pulled from the office files, several witnesses made positive identification. Eileen Brannin and Sheri Stief identified defendant as the man they saw walking back and forth outside the lumber company. Lila Fuller identified defendant as the man she observed inside the store. Tim Rostad identified Radi as the man he saw inside the store and later in the near vicinity.

Based upon the above facts Miner was charged with one count of burglary and one count of theft on September 12, 1974. In due course, motions were made to dismiss the Information and to suppress photo identifications made of defendant. After a hearing, the district court denied both motions, and the case proceeded to trial.

The jury returned a verdict of guilty on the count of burglary. Miner was sentenced to ten years in prison. It is from this judgment and sentence that defendant now appeals.

Three issues are presented for review:

1) Whether or not the Information filed against defendant was supported by probable cause?

2) Whether or not the trial court erred in denying defendant's motion to suppress photo identifications made of defendant?

3) Whether or not the trial court erred in giving its Instruction No. 21 as to defendant's accountability for the acts of another?

In the first issue defendant contends the Information filed was not supported by probable cause. We find no merit in this contention. Section 95-1301(a), R.C.M. 1947, allows the filing of an Information if after review of the evidence supporting the affidavit the court is satisfied that there is probable cause to believe that an offense has been committed by defendant. The definition of probable cause to arrest is discussed extensively in State ex rel. Pinsoneault v. District Court, 145 Mont. 233, 240, 400 P.2d 269. There the Court held that the expression "probable cause", as used in the federal Constitution, referring to the issuance of warrants, means that there is a probability that a crime has been committed by the person named in the warrant.

In determining the probability that defendant committed an offense, the guidelines suggested in Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L ed 2d 637, have been noted with approval by this Court. See: State v. Troglia, 157 Mont. 22, 482 P.2d 143. Generally those guidelines state that a mere probability is sufficient for probable cause, a prima facie showing not being necessary. Also affidavits of probable cause are subject to much less rigorous standards than the admissibility of evidence. Finally, judges reviewing such affidavits should use their common sense in determining whether probable cause exists.

With these guidelines in mind, we review the pertinent facts: Three witnesses positively identified defendant as either in the store, walking suspiciously in front of the store immediately prior to the burglary, or walking in the vicinity of the store immediately after the burglary. Deputy Brannin also identified defendant as being in the vicinity immediately after the burglary. Several witnesses saw two men inside the lumber yard with one of the men matching the description of defendant. Gary Radi, a known associate of defendant, was seen in the store and later stopped and questioned in the immediate vicinity.

Of all this evidence going to probable cause, the only point of confusion seems to be as to who was seen inside the store. Defendant contends since three witnesses did not agree with Lila Fuller's identification of defendant as being in the store, there is a breakdown in probable cause. First, probable cause is determined on the basis of probability not percentages. If one witness could positively identify defendant as being in the store this would point to the probability he was indeed involved in the burglary--this is what probable cause is all about. Second, any one piece of evidence is not determinative of probable cause, rather all evidence must be examined before any determination can be made; and upon such examination there are ample facts to support a finding of probable cause to arrest.

Since the facts show defendant present at the time and location of the burglary, his intent is to be determined from the facts and circumstances presented, a jury question. State v. Cooper, 158 Mont. 102, 489 P.2d 99.

In the second issue defendant contends the trial court erred in denying defendant's motion to suppress photo identifications of defendant. Again, we find no merit in this contention. Defendant alleges the photo lineup procedure was a violation of his right to counsel because by the time the second set of photos was shown

- 5 -

the proceedings had ceased being investigatory and had become accusatory. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L ed 2d 1149. However, the facts indicate it was only after the second set of photos was shown that some witnesses positively identified defendant. It was upon the basis of this positive identification that the Information was filed and defendant arrested.

A case in point as to the critical stage where right to counsel is required is Kirby v. Illinois, 406 U.S. 682, 690, 92 S.Ct. 1877, 32 L ed 2d 411,418, where two men arrested upon suspicion of a crime but not yet formally charged, were confronted and identified by the victim of that crime. The United States Supreme Court upheld the validity of this confrontation in the absence of counsel on the basis that the critical stage of formal proceedings against the suspects had not been initiated. The Court said:

> "In this case we are asked to import into a routine police investigation an absolute constitutional guarantee historically and rationally appliable only after the onset of formal prosecutorial proceedings. We decline to do so."

See also: United States v. Ash, 413 U.S. 300, 93 S.Ct. 2568, 37 L ed 2d 619.

Since the United States Supreme Court saw no need for counsel during a physical lineup after arrest but prior to the filing of formal charges, this Court sees no reason to require counsel during a photo lineup prior to the time defendant was arrested. Accordingly, this Court finds the critical stage where police procedure changes from investigative to accusatorial was not reached at the time the photo displays of defendant were made and therefore defendant was not entitled to counsel at that time.

Defendant also contends the photo lineup procedure used was so suggestive as to almost compel witness identification of him as the guilty party and as such was a violation of the due process clause of the Fifth and Fourteenth Amendments. In Simmons v. United

States, 390 U.S. 377, 384, 88 S.Ct. 967, 19 L ed 2d 1247,1253, the Court in dealing with a photo lineup situation similar to the instant one said:

> "* * * The danger that use of the technique may result in convictions based on misidentification may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method's potential for error. We are unwilling to prohibit its employment, either in the exercise of our supervisory power or still less, as a matter of constitutional requirement. Instead, we hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." (Emphasis supplied.)

See also: Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L ed 2d 1199.

Therefore, unless the error is obvious and the prejudice clear, the defendant's remedy is in effective cross-examination with the identification question then becoming one of weight to be determined by the jury and not one of admissibility. Applying the Simmons test to the facts of this case, this Court perceives no photo lineup procedure which was so flagrantly suggestive as to require a suppression of the photo identifications.

The photos used for identification were categorized into three sets. The first set contained pictures of defendant and known associates, including Gary Radi. The second set from which several witnesses made positive identification of defendant, contained pictures of defendant and Gary Radi. The third set contained miscellaneous pictures pulled out of the sheriff's office file. These photo sets were shown together not to create impressions but rather to verify descriptions and information already gathered.

In his final issue, defendant contends that the aiding and abetting instruction given by the district court was improper. The court's Instruction No. 21 reads:

- 7 -

"You are instructed that a person is responsible for the conduct which is an element of an offense if the conduct is either that of the person himself or that of another and he either before or during the commission of an offense, and with the purpose to promote or facilitate such commission, solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense."

The source of this instruction is section 94-2-107(3), R.C.M. 1947. Defendant does not contend the instruction does not adequately state the law but rather that it is not supported by any evidence which was presented at trial. This Court cannot agree.

It is true that no instruction may be given which is not supported either by some evidence or some logical inference from other evidence which was presented at trial. But, in this case, there is sufficient support in the transcript for the giving of this instruction.

Defendant was seen walking back and forth in front of the lumber store immediately prior to the burglary. Defendant fit the description of one of the two men seen inside the lumber yard. He was later seen in the vicinity by several witnesses. He is an admitted associate of Gary Radi who was positively identified as being inside the store. If, despite the testimony of Lila Fuller, the jury actually believed it was Radi alone who entered the building, it still had sufficient evidence before it to find that defendant was collaborating with him on the burglary. Where there is substantial evidence to support the jury's verdict, this Court will not reverse. State v. Stoddard, 147 Mont. 402, 412 P.2d 827; State v. Cor, 144 Mont. 323, 396 P.2d 86; State v. Robinson, 109 Mont. 322, 96 P.2d 265.

The judgment of the district court is affirmed.

_____
Justice

We Concur:

_James T. Harrison_
Chief Justice

_Wesley Castles_

_Paul D. Haswell_

_John Conway Harrison_
Justices.