No. 14631

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

BRUCE R. BLINZLER,

Defendant and Appellant.

Appeal from:  District Court of the Eleventh Judicial District,
Honorable James M. Salansky, Judge presiding.

Counsel of Record:

For Appellant:

James D. Moore, Kalispell, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Ted O. Lympus, County Attorney, Kalispell, Montana

Submitted on briefs: August 2, 1979

Decided: SEP - 5 1979

Filed: SEP - 5 1979

*Thomas J. Kearney*
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Appellant was convicted on two counts of practicing chiropractic without a license in violation of section 37-12-301, MCA, following a jury trial in the District Court of the Eleventh Judicial District, the Honorable James M. Salansky presiding. He was sentenced to pay a fine of $200 on each count, and he appeals from that judgment.

Appellant is a naturopathic physician practicing in association with Kenneth L. Piller in Kalispell, Montana, having come there from the State of Pennsylvania where he had practiced as a naturopathic and chiropractic physician for a period of some ten years. In 1977 Dr. Blinzler became interested in moving to Montana and submitted an application for a Montana chiropractic license. Before coming to the state he contacted Dr. Ronald R. Hoye, president of the National Association of Naturopathic Physicians and Stanley Crowe, a Boise attorney representing the national association, to inquire into the legal requirements to practice in the State of Montana. He was informed that Montana had no requirement for the licensing relating to the practice of naturopathy. After conferring with Dr. Hoye and Mr. Crowe in Idaho, appellant and Dr. Piller moved to Kalispell where they opened up a naturopathic clinic. Dr. Hoye advised him that upon coming to Kalispell he should contact Dr. Merlin Anderson, a Kalispell naturopathic physician who had practiced in the area some 20 years.

On December 20, 1977, informations were filed against appellant, Bruce Blinzler, and his associate charging them with practicing medicine without a license and practicing chiropractic without a license, both District Court misde-

-2-

meanors. Appellant herein was charged with two counts of chiropractic and one count of medicine. He entered pleas of not guilty to these charges. Subsequently, the information was amended on April 4, 1978, when three counts were added against appellant. Again, on July 21, 1978, the information was amended and appellant ended up being charged with a total of seven counts of either practicing medicine or practicing chiropractic without a license. To all of these charges, appellant entered a plea of not guilty.

Trial by jury followed. Prior to going to the jury, one count of practicing chiropractic without a license was dismissed. Appellant was acquitted of the four counts of practicing medicine and was found guilty on two counts of practicing chiropractic. From the verdict and judgment, appellant appeals.

The issues presented for our consideration are:

1. Whether the statutes under which appellant was prosecuted violate the due process clause and equal protection clause of the United States Constitution and the Montana Constitution?

2. In the event the statutes are constitutional, was the evidence sufficient to support the convictions?

3. Do the double jeopardy provisions of the United States and Montana Constitutions bar the convictions?

The first issue before this Court is the question of whether the charges are specific enough to satisfy due process. We first note that the constitutional validity of the definition of "medicine" as set forth in section 37-3-102(a), MCA, is not before the Court in this case. Much of appellant's brief concerns the practice of medicine and the statutes controlling the same; however, in this case, appel-

lant was not convicted of unlawfully practicing medicine under the statute in question. On those charges the jury returned a verdict of acquittal, and there can be no prejudice shown in this case in the operation of section 37-3-102(a), MCA. Appellant, therefore, lacks standing to challenge its constitutionality.

As this Court noted in State ex rel. Hauswirth v. Beadle, et al. (1931), 90 Mont. 24, 27, 300 P. 197, this Court will not consider moot points. There, the Court noted:

> "The question presented is moot. (See State
> ex rel. Rankin v. Martin, 65 Mont. 323, 211 P.
> 210; Honstain v. Board of County Commissioners,
> 52 Mont. 391, 158 P. 476; Chesapeake Western
> Railway v. Jardine, 56 App.D.C. 33, 8 F.2d 794.)
> This Court will not pass on moot questions.
> (State ex rel. O'Grady v. District Court, 58
> Mont. 695, 198 P. 1117; State ex rel. Rankin v.
> Martin, supra; State v. Knilans, 69 Mont. 8,
> 220 P. 91; State ex rel. St. George v. Justice
> Court, 84 Mont. 173, 274 P. 495.)"

Therefore, the constitutionality of section 37-3-102(a), MCA, was rendered a moot question by the jury's verdict of acquittal on the counts charged under that section. Appellant was convicted only of the unlawful practicing of chiropractic, and therefore only the constitutionality of that statute is properly before the Court, viz., section 37-12-101(2), MCA, defining the practice of chiropractic.

We are faced, therefore, with the question of whether section 37-12-101(2), MCA, is sufficiently specific and detailed to satisfy the requirements of due process. Subsection (2) of this statute reads:

> "'Chiropractic' is a system of specific adjust-
> ment or manipulation of the articulations and
> tissues of the body, particularly of the spinal
> column, for correction of nerve interference
> and includes the use of recognized diagnostic
> and treatment methods as taught in chiropractic
> colleges but does not include surgery or the
> prescription or use of drugs."

-4-

To summarize the argument of appellant, he contends that the statute defining the practice of chiropractic contains an indefinite term--"specific adjustment or manipulation"--which is susceptible to differing interpretation by experts in the field of chiropractic. He further argues that the public cannot be expected to provide the content for this term when experts are unable to agree as to its meaning, and that the statute is therefore unconstitutionally vague.

Noting the definition of chiropractic, appellant argues that nowhere are the terms "specific adjustment" or "articulations and tissues" defined. Therefore, he says, the statute has an incomprehensible standard to the members of the public and places a heavy burden upon a defendant. With regard to the heavy burden placed on a defendant, appellant argues that the statute provides no ascertainable standard of conduct against which he might reasonably have measured his conduct as a naturopath, noting:

> ". . . There must be ascertainable standards of guilt. Men of common intelligence cannot be required to guess at the meaning of the enactment. The vagueness may be from uncertainty in regard to persons within the scope of the act, Lanzetta v. New Jersey, 306 U.S. 451, or in regard to the applicable tests to ascertain guilt." Winters v. New York (1948), 333 U.S. 507, 515-516, 68 S.Ct. 665, 92 L.Ed. 840.

In Winters the Supreme Court went on to note:

> "'Where the statute uses words of no determinative meaning, or the language is so general and indefinite as to embrace not only acts commonly recognized as reprehensible, but also others which it is unreasonable to presume were intended to be made criminal, it will be declared void for uncertainty.'" 333 U.S. at 516, quoting State v. Diamond (1921), 27 N.M. 477, 485, 202 P. 988, 991.

Appellant argues that, based on Winters, when a statute is so vague as to make criminal an innocent act the convic-

tion cannot be sustained. H. J. Clack Co. v. Public Service Commission (1933), 94 Mont. 488, 22 P.2d 1056. At trial, witnesses Bekkedahl, Vernon, Gorder, and Strunk testified as to the nature and the extent of appellant's treatment of their respective conditions. In addition, the State produced the expert testimony of Dr. Loren Weis and Dr. Walter Kaye, both licensed chiropractors in the State of Montana, who identified the movements practiced on Vernon and Gorder as specific adjustments. Dr. Weis in addition described the relationship between specific chiropractic adjustments and nerve interference.

The evidence introduced by appellant conflicted with the State's evidence on the issue of specificity. Dr. Hoye, a naturopath, testified that manipulations done by a naturopath in his practice differ from chiropractic adjustments in that naturopathic manipulations lack specificity. Appellant testified that the manipulations done on Vernon and Gorder were general rather than specific. On the basis of the conflicting evidence presented to the jury, the jury found appellant guilty of practicing chiropractic without a license.

The United States Supreme Court in Connally v. General Construction Company (1926), 269 U.S. 385, 391-92, 46 S.Ct. 126, 70 L.Ed. 322, noted:

> "The question whether given legislative enactments have been thus wanting in certainty has frequently been before this court. In some of the cases the statutes involved were upheld; in others, declared invalid. The precise point of differentiation in some instances is not easy of statement. But it will be enough for the present purposes to say generally that the decisions of the court upholding the statute as sufficiently certain, rested upon the conclusion that they employed words or phrases having a technical or other special meaning, well enough known to enable those within their reach to correctly apply them, Hygrade Provision Co. v. Sherman, 266 U.S. 497, 502; Omaechevarria v. Idaho, 246 U.S. 343,

348, or a well-settled common law meaning, not-withstanding an element of degree in the defini-tion as to which estimates might differ, Nash v. United States, 299 U.S. 373, 376; International Harvester Co. v. Kentucky, supra, at 223, or, as broadly stated by Mr. Chief Justice White in United States v. Cohen Grocery Co., 255 U.S. 81, 92, 'that, for reasons found to result either from the text of the statutes involved or the subjects with which they dealt, a standard of some sort was afforded.' . . ."

We find that this case falls within the first class identified in Connally, supra. The term "specific adjustment or manipulation" is a scientific term having a readily ascertainable definition within the chiropractic community, and appellant herein, as a chiropractor licensed in two states, cannot assert a lack of notice of the meaning of the terms.

Viewing the statute in question, in light of the conduct of which appellant was convicted, most certainly appellant was given adequate notice of the kind of conduct that the statute proscribes. Although no particular mental state is identified in section 37-12-301, MCA, the Montana Criminal Code clearly requires that the practice of chiropractic be done knowingly or purposely to constitute an offense. Section 45-2-103(1), MCA. The trial court instructed the jury in the term similar to the Idaho statute relied upon in Omaechevarria v. Idaho (1918), 246 U.S. 343, 38 S.Ct. 323, 62 L.Ed. 763, that the act and intent must both be proved beyond a reasonable doubt to satisfy a conviction. Here, the testimony of two State's witnesses, Dr. Weis and Dr. Kaye, gave a definition of the term "specific adjustment" upon which the jury could make a proper decision of what "specific adjustment" was, which was "when a person is presented with a localized condition involving one or two or three vertebrae and intentionally brings about a movement

of these vertebrae to relieve that condition, he or she has performed a specific adjustment."

The key to the query here is whether the statute in question provides a standard with meaningful differentiation between culpable and innocent conduct. Under section 37-12-301, MCA, such a standard exists: there can be no statutory violation unless the adjustment in question is shown to be specific and intentional. It is manifest in this case that "specificity" provides a meaningful standard. In fact, a lack of specificity resulted in the dismissal of one count in this case.

The United States Supreme Court in Roth v. United States (1957), 354 U.S. 476, 491-92, 77 S.Ct. 1304, 1 L.Ed.2d 1498, where they quoted from United States v. Petrillo (1947), 332 U.S. 1, 7-8, 67 S.Ct. 1538, 91 L.Ed. 1877, had this to say:

> ". . . lack of precision is not itself offen-
> sive to the requirements of due process. '. . .
> [T]he Constitution does not require impossible
> standards'; all that is required is that the
> language 'conveys sufficiently definite warning
> as to the prescribed conduct when measured by
> the common understanding and practices. . .'
> . . .'That there may be marginal cases in which
> it is difficult to determine the side of the
> line on which the particular fact situation
> falls is no sufficient reason to hold the lan-
> guage too ambiguous to define a criminal of-
> fense . . .'"

Here appellant was a chiropractor by profession and training. Since he was unlicensed in Montana, and during the time the offense was committed had an application in to be licensed in Montana as a chiropractor, the law placed the responsibility on him to assure that his practice of naturopathy be performed with no chiropractic movements. The fact that the law required appellant to make a choice, and extracted a penalty when his judgment proved incorrect, does

-8-

not invalidate the statute. As noted in the United States Supreme Court case of Hygrade Provision Co. v. Sherman (1925), 266 U.S. 497, 502, 45 S.Ct. 141, 69 L.Ed. 402: "If exceptional cases may sometimes arise where opinions might differ, that is no more than is likely to occur, and does occur, in respect to many criminal statutes either upheld against attack or never assailed as indefinite." Here, appellant chose to perform a manipulation which the jury found to be specific and therefore prohibited to all except licensed chiropractors.

The next issue raised is whether the record reflects substantial evidence to support the jury's verdict. Appellant argues that there is no evidence establishing that the treatment of Vernon and Gorder involved specific adjustment or that the treatments were for the purpose of relieving nerve interference. A review of the record discloses that this contention is without merit.

A brief review of the facts show that Vernon testified that she went to appellant's office complaining of a "rib out." She stated that appellant told her he could put it in place. According to her testimony, appellant then placed his knee on the place indicated by her and pulled her arms back, causing pain.

Gorder testified to a treatment of his lower back. He testified that he told appellant he had lower back problems. He was placed lying on his stomach, and appellant told him one of his vertebrae was lower than the other in the lower back. Appellant then pushed down on his back and it sounded like "bones moving."

While appellant argues that there is no expert testimony to establish that these were specific adjustments, Dr. Weis

testified that placing a knee and pulling back on the shoulders was "pretty specific." "When you have your knee in one particular spot, like against a rib, or where the rib joins the vertebra, you have a particular spot."

This Court has often stated that a jury verdict based on substantial evidence will be sustained on appeal. See, State v. Pankow (1959), 134 Mont. 519, 522, 333 P.2d 1017. Substantial evidence was presented here from which the jury could conclude that the treatment of Vernon and Gorder involved specific adjustments for relief of nerve inter- ference. Therefore, the jury verdict and judgment will not be disturbed.

Appellant next alleges that he was subjected to double jeopardy by the charges of the State. He argues that the failure of the State to elect between Counts I and II, which charged practice of chiropractic on Bekkedahl, Julia Vernon, and Lee Gorder, and Counts IV through VI, charging the practice of medicine on the same patients for the same conduct, subjected him to double jeopardy. He argues that under the recent case of State ex rel. McKenzie v. District Court (1974), 165 Mont. 54, 525 P.2d 1211, this Court adopted a so-called "same transaction" test and abandoned the tradi- tional "same facts" rule. Since the counts clearly arose from the same transaction, it is argued that the failure by the State to elect between practicing medicine and practicing chiropratic subjected appellant to double jeopardy. We find no merit to this argument.

The Fifth Amendment of the United States Constitution provides that no person "shall be subject for the same offense to be twice put in jeopardy of life or limb." This prohibition is applicable to state actions under the "due

-10-

process" clause of the Fourteenth Amendment of the United States Constitution. North Carolina v. Pierce (1969), 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656. It protects offenders from multiple punishment for the same offense. Ex Parte Lange (1873), 85 U.S. (18 Wall) 163, 21 L.Ed. 872, and Kohlfus, v. Warden (1962), 149 Conn. 692, 183 A.2d 626. Montana's constitutional provision is substantially similar providing that "no person shall be again put in jeopardy for the same offense . . ." 1972 Mont. Const., Art. II, §25.

In a recent case, State v. Davis (1978), ____ Mont. ____, 577 P.2d 375, 377, 35 St.Rep. 381, this Court considered the issue raised here and held:

> "This Court has consistently quoted with approval the following holding from the Massachusetts case of Morey v. Commonwealth (1871), 108 Mass. 433, 434:
>
> "'. . . A single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other.'
>
> "State v. Marchindo (1923), 65 Mont. 431, 446, 211 P. 1093; State v. Lagerquist (1968), 152 Mont. 21, 30, 445 P.2d 910; State v. McDonald (1971), 158 Mont. 307, 310, 491 P.2d 711. See also Blockburger v. United States (1932), 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306; Gore v. United States (1958), 357 U.S. 386, 78 S.Ct. 1280, 2 L ed 2d 1405."

Here, the statutes set forth separate and distinct criminal offenses that are designed for the protection of completely different offenses. Therefore, appellant suffered no violation of his rights under either the United States Constitution or the 1972 Montana Constitution.

The protection against double jeopardy is also statutory in Montana. Section 46-11-502, MCA, provides:

> "When the same transaction may establish the commission of more than one offense, a person charged with such conduct may be prosecuted for each such offense. He may not, however, be convicted of more than one offense if:
>
> "(1) one offense is included in the other;"

Under this statute appellant suffered no violation unless he was convicted of two offenses, one of which is included in the other. The mere charging of included offenses involves no violation of appellant's rights, nor are his rights infringed upon if the State fails to elect or charge in the alternative as long as a defendant is not convicted of both offenses. Here, appellant was convicted of two counts of practicing chiropractic without a license involving the treatment of two different patients on different occasions. These convictions are not subject to, nor do they violate, the double jeopardy provision.

We note in closing that appellant argues that the State no longer follows "the same facts" rule but has now adopted the so-called "same transaction" test. We find this argument erroneous. In the recent case of State v. Perry (1979), ___ Mont. ___, 590 P.2d 1199, 36 St.Rep. 291, this Court applied Montana's statutory same facts rule, section 46-11-501(2)(a), MCA. Perry involved an issue similar to the one raised in State ex rel. McKenzie v. District Court, supra, which is fully consistent with the holding in Perry. We noted in McKenzie: "The joinder provisions of section 95-1504, R.C.M. 1947 [now section 46-11-404, MCA], are highly flexible. Part (a) therefore permits an information to charge two or more different offenses, connected together in their commission. . ." McKenzie, 165 Mont. at 62.

Appellant argues that the offenses arising from the same transaction generally must be prosecuted together to avoid double jeopardy. However, where, as here, the State prosecutes "the same transaction" offenses together, double jeopardy is implicated under section 46-11-502, MCA, only if a defendant is convicted of two offenses, one of which is

-12-

included in the other.  Here, appellant suffered no such dual convictions, and his double jeopardy claim is therefore without merit.

Finding no prejudicial error, the convictions are affirmed.

_____
                                       Justice

We concur:

_____
         Chief Justice

_____

_____
         Justices

-13-