No. 13039

IN THE SUPREME COURT OF THE STATE OF MONTANA

1976

---

THE STATE OF MONTANA,

Plaintiff and Appellant,

-vs-

BRYON PAUL BEAUDETTE,

Defendant and Respondent.

---

Appeal from: District Court of the Eighteenth Judicial District,
Honorable W. W. Lessley, Judge presiding.

Counsel of Record:

For Appellant:

Perry J. Moore argued and Robert J. Rice appeared,
Bozeman, Montana

For Respondent:

Hon. Robert L. Woodahl, Attorney General, Helena,
Montana
John F. North, Assistant Attorney General, argued,
Helena, Montana
Donald White, County Attorney, Bozeman, Montana

---

Submitted: October 14, 1976

Decided: NOV 2 6 1976

Filed: NOV 2 6 1976

Thomas J. Kearney
Clerk

Mr. Chief Justice James T. Harrison delivered the Opinion of the Court.

This is an appeal from a jury verdict entered in the district court, Gallatin County.

On December 31, 1974, two men robbed the Oakes Bar in Bozeman, Montana. The men wore stocking caps and ski masks throughout the robbery. The taller of the two men with a gun in his left hand controlled the robbery, while the other man remained near the back of the bar in the shadows, also armed with a gun. The shorter man was referred to as "Michael" by the taller man. The owner described the taller man as 5'10" to 6' tall, 185-220 lbs, brown shoulder length hair, wearing glasses, a blue or green down jacket, and a stocking cap. The two men left through the rear door after the robbery.

At about this time a man outside the Oakes Bar observed two men, one carrying a gun, run out the rear door of the Oakes Bar and enter a brown GM type car with a white top, having no rear license plate. This witness was joined shortly by the owner of the Oakes, whereupon they watched this car proceed in an easterly direction. The police were notified and an all points bulletin was issued giving a description of the car and the two robbers.

Shortly thereafter, a brown GM type automobile with a white top, bearing no license plates was stopped east of Bozeman. Three men were in the car, Gary Radi, John Michael Miner, and defendant, Byron Paul Beaudette. Defendant was 6'1" tall, weighed 220 lbs., had long brown hair, and wore glasses. In the back seat of the car was a blue down jacket, later worn by Beaudette when questioned in Livingston.

On January 2, 1975, the owner of the Oakes Bar, three patrons present during the robbery, and the witness who observed

- 2 -

the get-away car were asked to make a photographic identification. One at a time these witnesses were asked to look at three pictures, and were told that all three men were suspects. The owner and one patron selected Beaudette as the taller robber. The other witnesses were unable to make any identification whatsoever.

At trial, the prosecution presented evidence of the pretrial photographic identification of defendant, as well as a positive in-court identification by the owner, and a tentative in-court identification by one patron. At the time of the in-court identifications, defendant was not seated at the defense counsel table, but in the fourth row of the spectator portion of the courtroom. Defendant was convicted by the jury and sentenced to 40 years in prison.

Defendant now appeals that judgment raising a single issue: Whether the conviction resulted from photographic identification procedure that was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification?

Leading United States Supreme Court cases dealing with pretrial identification procedures and subsequent in-court identifications are Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L ed 2d 1199; Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 19 L ed 2d 1247, 1253; Foster v. California, 394 U.S. 440, 89 S.Ct. 1127, 22 L ed 2d 402; and Neil v. Biggers, 409 U.S. 188, 196, 93 S.Ct. 375, 34 L ed 2d 401, 410.

In Neil there is dictum that there are two distinct tests, a more stringent one requiring inadmissibility of evidence of pretrial identification, and a more lenient one applied to cases such as Simmons, where only an in-court identification is relied upon. A thorough analysis from Stovall through Neil is provided

by Justice Friendly in Brathwaite v. Manson, 527 F.2d 363 (2nd Cir. 1975). As Justice Friendly points out, there is sound policy to require inadmissibility of evidence of an impermissibly suggestive pretrial identification, since more probative value is often times given to such than an in-court identification. The reason is that the pretrial identification is usually made immediately after the crime, when it is still fresh in the minds of the witnesses, and such identification is not subject to cross-examination as is the in-court identification.

However, in this case we are confined to the admissibility of the in-court identification, since defendant did not object to the pretrial photographic evidence, and his proposed instruction questioned only the reliability of the in-court identification. Therefore, we must apply the appropriate test for those cases where the prosecution relies solely upon an in-court identification, as mandated by Neil, citing Simmons:

> "' * * * we hold that each case must be considered on its own facts, and that convictions based on eyewitness identifications at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'" (Emphasis supplied.)

The photographic identification procedure used here (only 3 pictures presented, and each witness informed that such pictures were of the robbery suspects) cannot be praised by this Court, since it was somewhat suggestive. However, considering the entire record, such procedure was not so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification in court (at which time defendant was not seated at the defense counsel table, but in the fourth row of the spectator portion of the courtroom). What does appear from the record

- 4 -

is that there are, similar to State v. Borchert, 156 Mont. 315, 319, 479 P.2d 454, sufficient material facts, other than the in-court identification, to support this conviction.

Two men robbed the Oakes Bar, the taller of the two held a gun in his left hand, wore a blue or green down jacket, and was described as 6' tall, 185-220 pounds, wore glasses, and had brown shoulder length hair. The two men got into a brown GM type car with a white top, without rear license plates and headed east. Shortly thereafter, a brown GM type car, with a white top and no license plates in which defendant was riding was stopped east of Bozeman. At this time defendant was 6'1" tall, weighed 220 lbs., had long brown hair, wore glasses, and was left-handed. Also there was a blue down coat on the back seat of the car which was worn by defendant later in Livingston. During the robbery, the taller man referred to the shorter one as "Michael". Also in the car was John Michael Miner, sometimes referred to as "Mike" by friends. The witness who observed the get-away car, testified this car was identical to the one he saw leave from the back of the Oakes. When the car was stopped, a highway patrolman observed a box partially under the front seat. When the car was searched in Livingston, the box was missing. Furthermore, a second eye-witness made a tentative in-court identification.

Where there is substantial evidence to support the jury's verdict, this Court will not reverse. State v. Miner, ____Mont. ____, 546 P.2d 252, 33 St.Rep. 201, 207.

The judgment is affirmed.

_____
Chief Justice

We concur:

_____

- 5 -

_____

_____
Justices

_____
Hon. Robert C. Sykes, District
Judge, sitting in place of Mr.
Justice Wesley Castles.