No. 83-319

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

---

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

ROY HANKINS,

Defendant and Appellant.

---

APPEAL FROM: District Court of the First Judicial District,
In and For the County of Lewis & Clark,
The Honorable Gordon Bennett, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Ann L. Smoyer, Helena, Montana

For Respondent:

Mike Greely, Attorney General, Helena, Montana
Mike McGrath, County Attorney, Helena, Montana

---

Submitted on Briefs: January 26, 1984

Decided: April 30, 1984

Filed: APR 30 1984

*Ethel M. Harrison*

Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

The defendant, Roy Hankins, was charged on June 30, 1982, in the District Court of the First Judicial District, with the felony offense of trafficking in the unlawfully obtained body parts of a protected species. On August 27, 1982, Hankins entered a plea of not guilty. On March 9, 1983, a jury found Hankins guilty of the offense charged. Hankins appeals from the jury verdict. We affirm.

At the outset, we note certain facts relevant to this appeal:

(1) In order to sell or transfer a bobcat pelt the pelt must bear a tag issued by a warden from the Fish, Wildlife and Parks Department. The tag is designed so that it cannot be removed without damaging the tag.

(2) During the trapping season involved in this case, each licensee was allowed one bobcat.

(3) The bobcat trapping season ran from December 1, 1981 to February 15, 1982 and there were ten days from the close of the season to tag a pelt.

On February 23, 1983, two days before the end of tagging, Hankins and his wife, Nancy, had game warden Jim Bird in Townsend tag a bobcat pelt with tag number 707 for Nancy Hankins. Bird later testified that the pelt "was old and dried out, and the fur was very short." That same day Roy Hankins appeared at the Fish, Wildlife and Parks warehouse in Helena with a bobcat pelt. The State later contended at trial that the pelt Hankins presented in Helena was the same pelt he had tagged earlier in Townsend. Hankins received tag number 1901 from the Helena warehouse

issued to Hankins himself as licensee.

Subsequently, Hankins sold a pelt bearing tag number 1901 to Bill Summers for $130. Summers in turn sold the pelt to Pacific Hide and Fur for $10 or $15 because the buyer at Pacific Hide and Fur considered the pelt to be of poor quality.

Thereafter, Warden Jim Bird of Townsend examined the pelt with tag number 1901 and later testified at trial that it was the same pelt he had tagged at Townsend with tag number 707. Bird also learned that on about March 18, 1982 Hankins sold a high quality pelt to Pacific Hide and Fur for $200. This pelt, which Bird later testified he had never seen before, bore tag number 707. Bird also testified at trial that tag number 707 showed signs of tool marks and appeared to have been pried off.

As a result of the foregoing occurrences Hankins was charged and convicted by a jury of violating Section 87-3-111, MCA, trafficking in the unlawfully obtained body parts of a protected species, a felony. Hankins was sentenced to serve one year in the Montana State Prison all of which was suspended if Hankins spent ten week-ends in the Lewis and Clark jail, paid a fine of $1,000 and forfeited his license to hunt, fish or trap for two years.

The first issue Hankins raises on appeal is whether the District Court erred in its instructions to the jury. Appellant contends that because the information referred to "bobcats"-- plural, the Distict Court should have instructed the jury that they had to find that more than one bobcat was illegally taken in order to convict the appellant.

Although the information did state that appellant

engaged in a common scheme to traffic in the "body parts" of unlawfully taken "bobcats," the jury instruction which referred to those terms singularly does not constitute reversible error. In State ex rel. McKenzie v. District Court (1974), 165 Mont. 54, 525 P.2d 1211, this Court held that the purpose of an information is to inform the defendant of what he is charged. "It is not the function of the information to anticipate or suggest instructions to the jury . . . It is a notice device, not a discovery device." State ex rel. McKenzie, supra, 165 Mont. at 63.

Appellant also asserts that the District Court's jury instructions failed to distinguish between the felony and misdemeanor offenses under Section 87-3-111(1) and (4), MCA. The misdemeanor portion of Section 87-3-111, MCA, provides:

> "It is hereby made unlawful for any person to purchase, sell, offer to sell, possess, ship or transport any game, fish, game bird, game animal or furbearing animal or part thereof protected by the laws of this state, whether belonging to the same or different species from that native to the State of Montana, except as specifically permitted by the laws of this State."

The felony portion of Section 87-3-111, MCA, provides:

> "Any person engaging in the activities prohibited in subsection (1) in furtherance of a scheme to traffic in the body parts of unlawfully taken species is guilty of a felony and shall be punished by a fine of $10,000 or imprisonment in the state prison for a term of 1 year or both."

When read together, the jury instructions clearly draw a distinction between the felony offense charged and the lesser included misdemeanor offense. Court's instruction number 1 provided, in pertinent part: "The Defendant, Roy Hankins, is, by information accused of trafficking in

-4-

unlawfully obtained body parts of a protected species, a felony . . . " Court's instruction number 10 provided, in pertinent part:

> "You are instructed that to prove the offense charged in this case, the State must prove the following propositions beyond a reasonable doubt:
>
> "First: That the bobcat pelt bearing tag #1901, or the pelt bearing tag #707, was unlawfully taken.
>
> "Second: That Roy Hankins purposely or knowingly purchased, sold, offered to sell, possessed, shipped or transported an unlawfully taken bobcat pelt, and that unlawfully taken pelt was the pelt bearing tag #1901, or the pelt bearing tag #707.
>
> "Third: That Roy Hankins committed or performed the acts described in the preceding paragraph in furtherance of a common scheme to traffic in the body parts of unlawfully taken species."

Court's instruction number 14 distinguished between the felony charged and the misdemeanor offense by providing, in part:

> "You are instructed that to prove the misdemeanor offense of unlawfully buying, selling, possessing or transporting game, the State must prove the following propositions beyond a reasonable doubt:
>
> "First: That the bobcat pelt bearing tag #1901, or the pelt bearing tag #707, was unlawfully taken; and
>
> "Second: That Roy Hankins purchased, sold, offered to sell, possessed, shipped or transported an unlawfully taken bobcat pelt, and that unlawfully taken pelt was the pelt bearing tag #1901, or the pelt bearing tag #707.

Court's instruction number 14 on the misdemeanor offense properly omitted the "common scheme" language required for a felony conviction. Moreover, "common scheme" was accurately defined by court's instruction number 7 which

provided:

> "'Common scheme' means a series of acts or omissions motivated by a purpose to accomplish a single criminal objective or by a common purpose or plan which results in the repeated commission of the same offense or affects the same person or the same persons or the property thereof."

Although appellant asserts the court's instruction on "common scheme" was an inadequate statement of the law, the instruction was taken directly from Section 45-2-101(7), MCA. On several previous occasions this Court has rejected challenges to jury instructions when those instructions restated statutory language. State v. French (1975), 166 Mont. 196, 531 P.2d 373; State v. Dunn (1970), 155 Mont. 319, 472 P.2d 288. Likewise, the court's instruction on the definition of "trafficking" was taken directly from Section 87-3-111, MCA, and did not constitute reversible error.

The District Court also did not err by refusing defendant's proposed jury instruction number 17 which set forth the duties of fish and game wardens. Where the instruction has no relevance to the case it serves no purpose but to confuse the jury. "An instruction should not be given if it is not relevant nor material to the evidence or issues in the case." State v. Brooks (1967), 150 Mont. 399, 436 P.2d 91. The fish and game wardens were not on trial in this case and appellant's proposed jury instruction was not relevant to the issues presented at trial.

A review of the jury instructions in their entirety indicates the jury was fully and fairly instructed on the applicable law and we cannot reverse the decision of the District Court. State v. Higley (Mont. 1980), 621 P.2d 1043, 37 St.Rep. 1942.

-6-

Next appellant asserts that the information was legally insufficient and defective on its face. Specifically, appellant argues the language of the information insufficiently apprised the appellant of the charges that were being brought against him.

The information stated the offenses essentially in terms of the statute with additional allegations of time and place. Montana follows the general rule that an information is sufficient if it properly charges an offense in the language of the statute describing the offense. State ex rel. Glantz v. District Court (1969), 154 Mont. 132, 461 P.2d 193. "An information need only be sufficient to apprise the accused of the crime charged. It need not be perfect." State v. Coleman (1978), 177 Mont. 1, 22, 579 P.2d 732, 745. Thus, the information in the case was legally sufficient and not defective on its face.

The appellant also maintains that the District Court erred in failing to rule on appellant's motion to dismiss on grounds that the information was unsupported by probable cause. However, the record shows that the District Court denied appellant's motion to dismiss on March 7, 1983 immediately preceding trial by jury.

Appellant also argues that the District Court erred in denying appellant's motion for a continuance. Eight months elapsed from the time of the filing of the information to the day of trial and the appellant has failed to demonstrate any prejudice that was caused by the District Court's denial of a continuance. "Motions for continuance are addressed to the discretion of the trial court and the granting of a continuance has never been a matter of right. The District

Court cannot be overturned on appeal in absence of a showing of prejudice to the movant." State v. Van Natta (Mont. 1982), 651 P.2d 57, 61, 39 St.Rep. 1771.

Finally appellant argues the District Court erred in its sentencing of the appellant. Specifically, appellant maintains the District Court erred by, (1) failing to order a presentence investigation; (2) failing to mention that appellant was to lose his trapping privileges; (3) charging the appellant by information with a felony but including misdemeanor sanctions in appellant's sentence; and (4) the sentencing was erroneous because potential punishment was not set forth in the information.

Section 46-18-111, MCA, provides in pertinent part:

> "No defendant convicted of a crime which may result in commitment for one (1) year or more in the state prison, shall be sentenced or otherwise disposed of before a written report of investigation by a probation officer is presented to and considered by the court, unless the court deems such report unnecessary." (Emphasis added.)

The plain language of the statute indicates the necessity of a presentence investigation is within the sound discretion of the District Court and appellant's assertion that the District Court erred by refusing to conduct an investigation is without merit. Moreover, the District Court clearly explained to appellant its reasons for the sentence it imposed and appellant declined to object or respond to those reasons with any mitigating circumstances he could find State v. Bretz (Mont. 1979), 605 P.2d 974, 36 St.Rep. 1037.

The District Court did not err by failing to mention appellant would lose his trapping privileges. The District Court clearly stated at sentencing that it would "impose the

sanctions set forth in Section 87-1-102, MCA," which includes the loss of trapping privileges.

Also, there is no merit to appellant's contention that the District Court could not use sentencing options in the felony which it could in the misdemeanor. Here, the felony includes the misdemeanor. Under Section 87-3-111, MCA, the State had to first prove the misdemeanor offense before it could prove the felony offense. Thus, the loss of hunting, fishing and trapping privileges was properly applied to the appellant.

Lastly, the sentence was not improper because the information failed to set forth appellant's potential punishment. Section 46-11-401, MCA, which provides what the charge shall contain, does not require the State to inform the accused of the potential punishments for the offense.

The State sustained its burden of proof and we find no reversible error. The conviction is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____
Justices

Mr. Justice Daniel J. Shea concurs and will file a written concurrence at a later time.

-9-

SPECIALLY CONCURRING OPINION OF

MR. JUSTICE DANIEL J. SHEA

No. ~~83-309~~ 83-319

STATE OF MONTANA

vs.

ROY HANKINS

FILED

JAN 6 - 1985

*Ethel M. Harrison*
CLERK OF SUPREME COURT,
STATE OF MONTANA

DATED:  January 6, 1985

Mr. Justice Daniel J. Shea specially concurring:

I agree with the majority's decision to affirm the defendant's conviction. However, I cannot agree with the majority's ruling that the jury instructions on "common scheme" and "trafficking," which set forth statutory language verbatim, are valid solely because they are drafted in statutory language. When a statute upon which a jury instruction is based is amgiguous or difficult to understand, that jury instruction is also usually ambiguous or unclear. Merely setting forth statutory language does not always fulfill the trial court's obligation to fully and accurately instruct the jury. Additional or different instructions may be needed in order to insure that the jury receives the clearest picture possible of the pertinent legal issues.

Daniel J. Shea
Justice