No. 85-93

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

STATE OF MONTANA,

          Plaintiff and Respondent,

  -vs-

PATRICIA MERRITT JOHNSON,

          Defendant and Appellant.

APPEAL FROM: District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable Jack L. Green, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Anthony F. Keast, Missoula, Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
        Dorothy McCarter, Asst. Atty. General, Helena
        Robert L. Deschamps, III, County Attorney, Missoula,
        Montana;  Karen Townsend, Deputy County Attorney

Submitted on Briefs: Feb. 26, 1986

Decided:  June 5, 1986

Filed:  JUN 5 - 1986

_____
Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

Following a jury verdict convicting Patricia Merritt Johnson of felony theft, the Missoula County District Court sentenced her to five years in prison with four years suspended and ordered her to pay restitution. Johnson appeals raising one issue; i.e., whether she received the effective assistance of counsel. We affirm the conviction.

In 1981 appellant worked for the Montana State Department of Highways as a Gross Vehicle Weight (GVW) enforcement officer. She worked at a highway scales station near Missoula, Montana. Generally, the duties of such an employee are to inspect trucks for vehicle registration and fuel requirements, to weigh and measure vehicles, to determine if a vehicle requires a permit or special license, and to sell such permits and licenses as the vehicles require. These employees are required to deposit the money they collect in the State Treasurer's account in local banks.

In October 1981 appellant resigned her position with the Department of Highways. The Department has a procedure for "checking out" GVW employees upon their resignation. The employees turn in their uniforms and the remaining permits and licenses which have been issued to them. Following appellant's resignation, the State discovered that several of the permits issued to appellant were unaccounted for. These permits were not returned to the State after appellant resigned nor was there a record of the deposit of money from their sale. State officials spoke with appellant, who was then living in New Mexico, by phone about the missing permits. The State conducted a further audit of appellant's work record. This audit showed that other work reports

required of appellant were missing. The audit also showed that appellant had sold permits but that there was no record that appellant had deposited the money in the State's account. The audit concluded that appellant collected $2,082.97 of State revenues which had never been accounted for. The audit further concluded that there was $82.00 worth of unaccounted for permits.

In October 1981 two Highway Department employees spoke with appellant about the missing documents. They both testified at trial that appellant assured them that she had all the missing permits and documents to clear her of suspicion. They both testified that the State never received any of this exculpatory material. Mike McMeekin, a deputy sheriff in Missoula, spoke with appellant in 1981 and testified that she claimed to have documents which would clear up any suspicions of her. McMeekin stated that he was to meet with appellant but that she did not show up or otherwise provide the police with the exculpatory material. Tom Adamo, an investigator with the Montana Criminal Investigation Bureau, gave testimony similar to the above comments of McMeekin.

Appellant did not account for the missing funds and permits and, as a result, she was arrested in New Mexico and returned to Montana to face the felony theft charge. She was initially arraigned in Missoula on this charge in October 1982. During a fourteen month period, appellant signed three waivers of speedy trial and her trial was delayed for some time. Appellant waived the right to a speedy trial apparently hoping her counsel could negotiate an out of court settlement. The State offered a plea bargain which provided that in return for a plea of guilty to felony theft, the

State would recommend a two year deferred sentence plus restitution of $2,500. Appellant was unable to raise that amount although she had a year to do so. Finally, appellant decided to assert her innocence and go to trial on the charge.

The District Court held appellant's trial on September 11 and 12, 1984. Shortly before trial, appellant and her counsel met before the court reporter to discuss the case while on the record. Counsel advised appellant that in her professional opinion it would be best to wait until the conclusion of the State's case-in-chief before deciding whether appellant would testify in her own defense.

At trial, counsel for appellant initially reserved her opening statement. The State presented its case-in-chief and established the facts surrounding the missing funds and permits. The State could not show what actually happened to the missing items and relied mainly on circumstantial evidence to prove its case. During the trial, the State elicited testimony showing that in 1977 Highway Department officials were unable to account for $147.50 in cash and permits that appellant was responsible for. Appellant's counsel did not object to this evidence. Following the State's case-in-chief, appellant and her counsel held another private discussion on the record to make strategic decisions. At that time, appellant's counsel stated that her professional opinion was that appellant should not take the stand; that appellant had the constitutional right to not take the stand; that it was appellant's decision whether or not to testify; that appellant did not have plausible answers for some of the questions the county attorney might ask; that, in her opinion, the potential harm in answering the

county attorney's questions outweighed any harm in not testifying; and that she did not see the need to call any witnesses on the appellant's behalf. The appellant decided of her own volition not to testify. After returning to the courtroom, appellant's counsel declined to call any witnesses and waived her opening statement.

In her closing argument, defense counsel advanced appellant's defenses to the theft charge. First, counsel vigorously attacked the accuracy of the State's audit. Counsel also argued that the State had not proved that appellant had the requisite intent (purposely or knowingly committing the offense) to be convicted of the offense. Counsel pointed out that the State only learned of the missing funds through appellant's daily reports reporting the sales of permits and collection of money therefrom. Counsel argued that it was inconsistent for appellant to report the sales on the one hand and then misappropriate the money (which had been reported) on the other hand. Lastly, counsel argued that if appellant failed to meet with State officials to clear up the matter, it was only because of miscommunication and the fact that appellant lived so far away in New Mexico.

The jury found appellant guilty of felony theft. After sentencing, this appeal followed. The only issue is whether the conviction must be overturned because ineffective assistance of counsel deprived appellant of a fair trial.

The Sixth Amendment of the United States Constitution and Art. II, § 24 of the Montana Constitution guarantee the right to counsel to a defendant in Montana. The right to counsel is recognized as a right to the effective assistance of counsel. McMann v. Richardson (1970), 397 U.S. 759, 90

S.Ct. 1441, 25 L.Ed.2d 763; State v. Bubnash (1961), 139 Mont. 517, 366 P.2d 155. The United States Supreme Court, in Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, recently stated what a defendant must show to gain reversal of his conviction where he claims ineffective assistance of counsel.

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Strickland, 466 U.S. at 687.

That is the test under the federal constitution. This Court recently adopted the Strickland formula as the test of whether a defendant's right to counsel under the Montana Constitution has been violated. State v. Elliot (Mont. 1986), ___ P.2d ___, 43 St.Rep. 723. We also cited the Strickland test for what constitutes prejudice to a defendant.

> "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of a proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."

State v. Robbins (Mont. 1985), 708 P.2d 227, 232, 42 St.Rep. 1440, 1444; citing Strickland, 466 U.S. at 694.

A defendant must show prejudice to establish a violation of her right to counsel under either the state or federal constitution. We hold that appellant has not shown that her defense was prejudiced by her counsel's performance. Thus, we further hold that appellant's state and federal constitutional rights to counsel were not violated. We have

- 6 -

no need to address the first prong of the Strickland test, which is whether counsel's performance was deficient. Such an approach was recommended in Strickland, where the Court stated:

> If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.

Strickland, 466 U.S. at 697.

Appellant alleges a number of errors on the part of her prior counsel. Appellant contends that her prior counsel should have subpoenaed State records and conducted an audit of those records. Appellant does not specify what records should have been audited nor what they would have shown. In any event, an audit of appellant's State work records was introduced into evidence and it showed that appellant was responsible for over $2,000 of missing funds and permits. We find no prejudice here.

Appellant asserts that her counsel should have contacted various trucking companies to see if those companies issued bad checks to appellant in buying permits from her. This assertion is based completely on speculation that bad checks may have been issued to appellant and that the State would hold her responsible. Such speculation does not show prejudice to appellant's defense.

Appellant also asserts that her prior counsel should have interviewed prospective defense and State witnesses. She contends that possible defense witnesses were familiar with the bookkeeping procedures of the GVW division. Appellant does not specify how these witnesses could have helped her defense or how the bookkeeping procedure was

inaccurate. We will not engage in speculation to find prejudice to appellant.

Appellant contends that her prior counsel failed to properly consult with her but again she does not specify how this prejudiced her defense. In any case, "Lack of communication between defendant and defense counsel is not of itself basis for reversal on grounds of ineffective assistance of counsel." State v. Long (Mont. 1983), 669 P.2d 1068, 1072, 40 St.Rep. 1493, 1497.

Appellant further asserts that her counsel failed to object to possibly inadmissible and prejudicial evidence (the testimony of a prior incident where $147 of State funds in appellant's control was unaccounted for). Although the court may have sustained an objection to this evidence, we do not find the failure to object to be sufficiently prejudicial to appellant to merit reversal.

> The failure to object to improper evidence, standing alone, is not sufficient grounds to support a claim of inadequate representation . . . (Citation omitted.)

State v. McElveen (1975), 168 Mont. 500, 507, 544 P.2d 820, 824. Nor is it sufficient in this case in combination with the other alleged errors.

Finally, appellant claims that her prior counsel failed to properly advise appellant of her Fifth Amendment right not to testify. We disagree. Above, we cited part of the discussion which appellant held with her counsel and which was made part of the record. The record shows that counsel advised appellant that appellant did not have to testify, that it was appellant's decision whether or not to testify, and that in counsel's opinion appellant should not testify.

In sum, we hold that appellant has not shown sufficient prejudice to her defense by counsel's performance to gain reversal. Therefore, appellant's claim of ineffective assistance of counsel must fail. We affirm the conviction.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices