No. 86-471

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

STATE OF MONTANA,

        Plaintiff and Respondent,

-vs-

DAN LOUIS MATSON,

        Defendant and Appellant.


APPEAL FROM:  The District Court of the Fourth Judicial District,
             In and for the County of Missoula,
             The Honorable Jack L. Green, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Cannon & Sheehy; Edmund F. Sheehy, Jr., Helena, Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
        John Paulson, Asst. Atty. General, Helena
        Robert Deschamps, III, County Attorney, Missoula,
        Montana; Robert Slomski, Deputy County Attorney


Submitted on Briefs: Dec. 31, 1986

Decided: May 13, 1987

Filed: MAY 1 3 1987

_Ethel M. Harrison_
Clerk

Mr. Chief Justice J. A. Turnage delivered the Opinion of the Court.

Defendant Matson appeals a bench conviction for aggravated assault in the Fourth Judicial District, Missoula County. On August 21, 1986, Matson was sentenced to ten years in prison, with all ten years suspended, and placed on probation. We affirm the conviction.

Matson raises five issues for our review:

1. Does substantial evidence support Matson's conviction?

2. Did the District Court abuse its discretion when it denied Matson's motion to dismiss at the close of the State's case?

3. Did the District Court abuse its discretion when it allowed the State to amend its information after trial began but before the verdict?

4. Did the District Court abuse its discretion when it admitted evidence of prior acts by Matson?

5. Did Matson receive effective assistance of counsel?

Matson is thirty-seven years old and resides with his parents on a six and one-half acre homesite in Seeley Lake, Montana. On June 15, 1985, two chickens belonging to Matson's neighbor flew onto Matson's property. Matson came out of his house with a pistol in his hand. For the next few minutes, Matson chased the chickens around his property until they flew back to his neighbor's land. As he stood at his fence, Matson waved the pistol and shouted at two neighbor children, ages ten and eleven, to keep their chickens off his property or "something will have to be done."

Issue 1

Does substantial evidence support Matson's conviction?

2

The court found Matson guilty of aggravated assault against one of the children, as defined in § 45-5-202(1)(c), MCA (1983): "A person commits the offense of aggravated assault if he purposely or knowingly causes . . . reasonable apprehension of serious bodily injury in another by use of a weapon. . ."

Matson contends that the evidence produced at trial was insufficient to support his conviction, because the State failed to prove that the children suffered reasonable apprehension of serious bodily injury.

Our standard of review on issues of substantial evidence is that a conviction cannot be overturned if the evidence, when viewed in a light most favorable to the prosecution, would allow any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. State v. Kutnyak (Mont. 1984), 685 P.2d 901, 910, 41 St.Rep. 1277, 1289. If events are capable of different interpretations, the trier of fact shall determine which is the most reasonable. State v. Atlas (Mont. 1986), 728 P.2d 421, 423, 43 St.Rep. 2042, 2044.

A careful review of the trial transcript convinces us that the evidence fully supports Matson's conviction for aggravated assault. The key elements of the crime are <u>reasonable</u> <u>apprehension</u>, <u>serious</u> <u>bodily</u> <u>harm</u> and use of a <u>weapon</u>. In their testimony, the neighbor children repeatedly stated that Matson had a <u>pistol</u> in his hand, that Matson pointed the pistol at them and that they were <u>afraid</u> they would be <u>shot</u>. The victim of the aggravated assault, Jason, testified to his fear:

> Q. Was there anything special about what he was doing with the gun that you remember?
>
> A. He cocked it.

3

. . .

```
Q. What were you thinking when that gun
was pointed at you?

A. I thought he was going to shoot me.

Q. How did that make you feel?

A. Real scared.
```

The other child who witnessed Matson's aggravated assault was Jason's sister, Jennifer. She testified about her fear and resultant nightmares, in which "I dreamed that he shot me." Furthermore, Matson admitted that he shouted at the children with a pistol in his hand:

```
Q. When you were standing at the raised
pistol position, did you yell at the
children at that time, or did you yell
at them when the pistol was in the
holster?

A. I already had intentions of putting
it in the holster. So as I yelled to
them I was already going to put it in
the holster. Its kind of a spontaneous
action. I thought it would do some
good, maybe, to tell them to keep the
chickens out or something will have to
be done.
```

However, Matson contends that the pistol in his hand was only a pellet pistol and not actually a "weapon." We note that section 45-2-101(71), MCA, defines "weapon" as "any instrument, article, or substance which . . . is readily capable of being used to produce . . . serious bodily injury." Serious bodily injury is defined as causing "protracted loss or impairment of the function or process of any bodily member or organ." Section 45-2-101(59), MCA. A pellet pistol does not escape the purview of "weapon," because a

4

high-velocity pellet in the eye is certainly capable of inflicting "serious bodily injury."

Furthermore, Matson's contention is directly rebutted by the testimony of both Jason and Jason's father. When Jason was shown Matson's pellet pistol, he was asked:

> Q. What's the difference about this gun compared to the one that was pointed at you?
>
> A. The other gun was silver, it had a brown handle, and it had a shorter barrel.

Jason's father also testified that he saw Matson holding a large caliber pistol, not a pellet pistol:

> Q. How do you know it was a large caliber pistol?
>
> A. Well, I'm fairly familiar with firearms enough to realize that the length of barrel, the configuration of the frame and so forth led me to believe at that time that that was a large caliber pistol.

In summary, the testimony of Matson himself, corroborated by three other witnesses, placed Matson in the immediate vicinity of the children, with an unholstered pistol in Matson's hand. By his own admission, and corroborated by two witnesses, Matson spoke menacing words to the children while holding the pistol. This evidence, when combined with the children's testimony that they feared they would be shot, was sufficient to establish the elements of reasonable apprehension of serious bodily injury by use of a weapon. State v. Van Haele (1983), 675 P.2d 79, 82, 40 St.Rep. 1964, 1967. We hold that the evidence fully supports the court's conclusion that Matson committed aggravated assault.

## Issue 2

Did the District Court abuse its discretion when it denied Matson's motion to dismiss at the close of the State's case?

Matson contends that the State failed to prove Matson used a "weapon" and, therefore, the court should have granted his motion.

We review this issue under the provisions of § 46-16-403, MCA, which states:

> When, at the close of the state's evidence or at the close of all the evidence, the evidence is insufficient to support a finding or verdict of guilty, the court may, on its own motion or on the motion of the defendant, dismiss the action and discharge the defendant. [Emphasis added.]

In construing the statute, we note that the motion for dismissal is conditioned upon "insufficient evidence" to support a finding of guilty. A motion to dismiss under § 46-16-403, MCA, should be granted only where there is no evidence upon which a trier of fact could base a verdict. State v. White Water (Mont. 1981), 634 P.2d 636, 638, 38 St.Rep. 1664, 1666. Based upon the State's presentation of direct evidence on the use of a weapon, we hold that the trial court exercised sound discretion and properly allowed the trial to proceed.

## Issue 3

Did the District Court abuse its discretion when it allowed the State to amend its information after trial began but before the verdict?

On July 19, 1985, the State filed an information against Matson, stating:

6

> Defendant committed the offense of
> AGGRAVATED ASSAULT, a Felony, as speci-
> fied in Section 45-5-202, MCA . . . On
> or about June 15, 1985, the above-named
> Defendant purposely or knowingly caused
> reasonable apprehension of bodily injury
> in Jason Nentwig, by use of a handgun, a
> large pistol, by pointing it at the
> victim.

However, § 45-5-202, MCA (1983), requires that the victim be under reasonable apprehension of <u>serious</u> bodily injury. Therefore, the information was amended, after the trial began but before the verdict, by inserting the word "serious" before "bodily."

The District Court concluded that the amendment was one of form and not of substance, that no additional or different offense was charged by the amendment, and that the amendment did not prejudice any substantial right of the defendant. Matson contends that the amendment was substantive and should not have been allowed.

In reviewing this issue, we are guided by § 46-11-403, MCA, which states:

> (2) The court <u>may</u> <u>permit</u> an information to be <u>amended</u> <u>as</u> <u>to</u> <u>form</u> at <u>any</u> <u>time</u> <u>before</u> <u>verdict</u> or finding if no addi-tional or different offense is charged and if substantial rights of the defen-dant are not prejudiced.

> (3) <u>No</u> <u>charge</u> <u>may</u> <u>be</u> <u>dismissed</u> <u>because</u> <u>of</u> <u>a</u> <u>formal</u> <u>defect</u> which does not tend to prejudice a substantial right of the defendant. [Emphasis added.]

Before analyzing the propriety of the amendment, we must first analyze the adequacy of the original information. An information is a written accusation prepared by a prosecutor in the name of the state against a person for the commis-sion of a crime. The information must reasonably appraise

the accused of the charges against him, so that he may have the opportunity to prepare and present his defense. State v. Coleman (1978), 177 Mont. 1, 22, 579 P.2d 732, 745. This requirement is satisfied if the charges sufficiently express the language of the statute which defines the offense. State v. Hankins (Mont. 1984), 680 P.2d 958, 962, 41 St.Rep. 762, 766; § 46-11-401(1)(c), MCA.

The original information fulfilled its primary purpose of notifying the defendant of the charges by capitalizing the words "aggravated assault" and specifically citing § 45-5-202, MCA. The original information simply paraphrased the statute. Standing alone, the original information was sufficient under Hankins.

The subsequent one-word amendment merely brought the paraphrase into tighter conformation with the wording of the cited statute. The amendment did not change the nature of the offense, the elements of the crime, or the burden of proof. The amendment was one of form rather than substance. Coleman, 177 Mont. at 23, 579 P.2d at 745.

Matson suffered no prejudice as a result of the amendment, especially because the State bore the heavier burden of proving "serious bodily injury" throughout the trial, and because the trial judge was fully aware of the elements of aggravated assault. The court's decision to allow the amendment did not infringe on Matson's basic right to prepare his defense. We hold that the District Court properly allowed the State to amend the information.

Issue 4

Did the District Court abuse its discretion when it admitted evidence of prior acts by Matson?

At an omnibus hearing on August 15, 1985, the State gave notice of its intent to introduce evidence of "other

8

acts." On August 28, 1985, the State filed a written notice, pursuant to the requirements of State v. Just (1979), 184 Mont. 262, 602 P.2d 957, which read:

> [T]he State of Montana will seek to introduce at the trial of this cause in its case in chief evidence of <u>other acts that are inseparably related to the crime charged, for the purpose of proving intent, absence of mistake or accident, or any other permissible factor</u> such as consciousness of guilt. [Emphasis added.]

Three days before trial, the District Court filed an order which stated: "The Court will allow all other evidence concerning the prior acts and observations of the neighbors contained in the State's Notice." In its case-in-chief, the State introduced these prior acts through testimony from Matson's neighbor that he had repeatedly seen Matson walk around his property with a large-caliber pistol on his hip; and through testimony from another neighbor that Matson shot at a woman on a horse who had crossed onto Matson's property. Matson contends that the court erred by allowing this evidence.

Our analysis of this issue is governed by Rule 404(b), M.R.Evid., which states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. <u>It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.</u> [Emphasis added.]

A trial judge is vested with broad discretion on the admissibility of evidence. However, the evidentiary value of a

prior act must outweigh the risk of prejudice flowing from its use. Rule 403, M.R.Evid.

The _Just_ notice gave Matson ample opportunity to prepare his defense. The prior acts mentioned in the _Just_ notice were relevant because they indicated both an on-going dispute and a motive for Matson's actions. This dispute was noted by Matson's counsel in his opening remarks:

> Your Honor, in this case it would be very difficult for the Court to make a determination of what actually went on that day without some sort of background on the relationship that has transpired between the Matsons and their neighbors . . . the purpose of the evidence would be to show the attitude that the neighbors all took to the Matsons at the time they moved here . . . the evidence could show the state of mind that the Matsons had . . . [Emphasis added.]

During trial, Matson also introduced evidence of neighbor disputes in which Matson was the injured party. However, he wished to exclude evidence of neighbor disputes in which Matson was the aggressor. Matson opened the door on these prior acts. We cannot allow him to pick and choose only those prior acts which favor his case.

Evidence of prior acts is admissible if these acts are relevant to some issue other than defendant's character or disposition to commit the crime charged. The prior acts were relevant to the hostility that existed between the Matsons and their neighbors. The prior acts were part of a chain of events leading to the aggravated assault. The prior acts were also probative of Matson's mental state at the time of the assault. State v. Bashor (1980), 188 Mont. 397, 420, 614 P.2d 470, 483.

In summary, the admission of prior acts lies within the discretion of the trial judge, provided that the probative

value outweighs the prejudicial. We find no abuse of that discretion. We hold that Matson's prior acts were admissible under Rule 404(b), M.R.Evid.

The State's Just notice also mentioned its intention to introduce evidence of Matson's arrest on April 9, 1982, for two counts of aggravated assault with a handgun. The notice stated: "During that incident the Defendant pointed a .38 cal derringer at two men. The Defendant was charged with aggravated assault. On April 22, 1982, the Defendant plead guilty to a reduced charge of misdemeanor assault."

The District Court responded to the notice in its order on October 18, 1985, where it stated: "The Court reserves ruling on the evidence surrounding the Defendant's arrest at Liquid Lonie's [sic] Tavern in Condon, Montana on April 9, 1982."

However, in its Findings of Fact, the Court stated: "The Defendant was arrested, charged, and convicted of aggravated assault in the summer of 1982 for pointing a handgun at two patrons of Liquid Louie's Tavern in Condon Montana."

At the outset, we note that the finding was incorrect. As the Just notice stated, Matson pled guilty to misdemeanor assault in a plea bargain, not aggravated assault as noted in the finding. In our analysis, we will first determine if the court properly allowed the evidence of the arrest and charges of aggravated assault. We will then determine the degree of harm caused by the error in the finding.

We defined the guidelines for the admission of other crimes under Rule 404(b) in Just, 184 Mont. at 269, 602 P.2d at 961. The four substantive requirements are: (1) similarity of crimes, (2) remoteness in time, (3) common system and (4) probative value.

In the instant case, both the prior crime and the charged crime involved assault with a handgun. Unless the

11

remoteness is so great that the evidence has no value, the remoteness of a prior crime "is directed to the discretion of the District Court and is a matter that goes to the credibility of the evidence rather than its admissibility." State v. Doll (1985), 692 P.2d 473, 476, 42 St.Rep. 40, 43-44. Even if the prior crime was not sufficiently "common" or "related," when the evidence "tends toward the conclusion that the defendant is guilty of the crime charged with moral certainty and beyond a reasonable doubt, it is certainly admissible." State v. Sigler (Mont. 1984), 688 P.2d 749, 752, 41 St.Rep. 1039, 1042. The probative value of the prior crime shows Matson's knowledge, as well as the absence of mistake or accident in the commission of the present crime. Furthermore, in a bench trial such as Matson's, there is less cause for concern that the prejudicial effect may outweigh the probative.

The procedural safeguards of Just prevent the defendant from being surprised by evidence of collateral, unrelated issues. In the instant case, the prosecution did not offer the evidence of prior crimes to show character, but only to show a specific element of knowledge. We find that the evidence of prior crimes does not violate the Just requirements. In its discretion, the District Court properly admitted Matson's prior arrest and charges of aggravated assault into evidence.

However, the court erred in its finding, which should have read that Matson was convicted of misdemeanor assault, not aggravated assault.

In determining the degree of harm caused by this error, we note that Matson's conviction can be solidly based on the testimony of the victim and the admissions of Matson himself. The evidence of prior acts, including the disposition of the prior crime, was superfluous. Furthermore, the District

12

District Court had a copy of the _Just_ notice, which properly stated that Matson pled guilty to misdemeanor assault.

We find that the error was harmless to the defendant. To correct the record, we direct the District Court to amend its Finding IX(c) to read "convicted of misdemeanor assault."

Issue 5

Did Matson receive effective assistance of counsel?

Following his conviction and sentencing, Matson retained new counsel to pursue the present appeal. Matson contends that he received ineffective assistance of counsel from his original attorneys because they failed to object to Matson's arrest without a warrant. However, we note that the propriety of Matson's arrest was irrelevant to his conviction. An illegal arrest, without more, has no impact on subsequent prosecution and has never been viewed as a defense to a valid conviction. State v. Ellinger (Mont. 1986), 725 P.2d 1201, 1205, 43 St.Rep. 1778, 1784.

Matson also argues that his counsel was ineffective at trial because they failed to object to most of the "other acts" evidence; failed to object to the original information until closing argument; and failed to object to opinion testimony regarding the credibility of Jason and Jennifer.

We review this issue under the test articulated in Strickland v. Washington (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to

13

> deprive the defendant of a fair trial, a
> trial whose result is reliable.

State v. Johnson (Mont. 1986), 719 P.2d 771, 773, 43 St.Rep.
913, 916.

Under the first prong of the Strickland test, Matson
generally alleges tactical trial errors by his original
counsel, but fails to specifically show how these alleged
errors constituted deficient performance. The decisions on
the timing and number of objections lie within counsel's
tactical discretion. We will not allow unsupported allega-
tions to brand counsel's performance as deficient. Matson
has failed to meet his burden of proof.

Matson stands convicted, not on the basis of unmade
objections, but on the basis of substantial evidence, in
which the great weight of testimony conclusively established
that Matson committed aggravated assault.

Affirmed.

_____
Chief Justice

We concur:

_____

_____

_____

_____

_____
Justices

14