No. 96-551

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997

STATE OF MONTANA,

        Plaintiff and Respondent,

v.

STEVEN J. POMEROY,

        Defendant and Appellant.

FILED

SEP 17 1997

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the First Judicial District,
                    In and for the County of Lewis & Clark,
                    The Honorable Jeffrey M. Sherlock, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Steven J. Pomeroy, Pro Se, Canyon Creek, Montana

    For Respondent:

        Hon. Joseph P. Mazurek, Attorney General, Helena, Montana
        Micheal Wellenstein, Ass't Attorney General, Helena, Montana

        Mike McGrath, Lewis & Clark County Attorney, Helena, Montana
        Mike Menahan, Deputy County Attorney, Helena, Montana

Submitted on Briefs: July 17, 1997

Decided: September 17,

Filed:

_____
                    Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1995 Internal Operating Rules, the following decision shall not be cited as precedent and shall be published by its filing as a public document with the Clerk of the Supreme Court and by a report of its result to State Reporter Publishing Company and West Publishing Company.

The State of Montana charged Steven J. Pomeroy with eleven separate fish and wildlife violations pursuant to Title 87, MCA. Pomeroy was found guilty of eight counts by the Justice Court jury. On appeal from Justice Court, the District Court jury found Pomeroy guilty of seven of those counts. The District Court sentenced Pomeroy to a total of 60 days in county jail and suspended his privileges to fish, hunt, trap and taxidermy for a period of 20 years. Pomeroy appeals from his convictions and his sentence. We affirm.

## Issues Presented

1. Was there sufficient evidence to support Pomeroy's convictions?

2. Did the District Court err by allowing evidence of possession of two cow elk when Pomeroy had been acquitted of one charge of possession in Justice Court?

3. Did the District Court abuse its discretion in sentencing Pomeroy?

## Standard of Review

The standard of review for sufficiency of evidence on appeal is whether, "after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." State v.

2

Ahmed (1996), 278 Mont. 200, 206, 924 P.2d 679, 683. Evidentiary rulings by the district court are reviewed under the abuse of discretion standard. State v. Gollehan (1993), 262 Mont. 293, 301, 864 P.2d 1257, 1263. Finally, on appeal, this Court only reviews sentences for their legality. It will not review sentences for mere inequity or disparity; that task is left to the Sentence Review Division of the State of Montana. State v. Ford (1996), 278 Mont. 353, 363, 926 P.2d 245, 251.

## Background

Stephen J. Pomeroy moved with his family from Colorado to Stryker, Montana near Whitefish in 1992. While living in Stryker, Pomeroy worked as a bartender at the Point of Rocks Restaurant. Sometime at the end of September or beginning of October of the same year, Pomeroy reported to work and told his employer, Cathy Stephens, that he had killed a mountain lion that morning near his home. Mountain lion season in Montana is held from December 1 to February 15. Pomeroy also told Stephens that he planned to have the mountain lion mounted.

In 1993, the Pomeroy family relocated again to Canyon Creek, Montana near Helena. Bill Franklin, Pomeroy's Canyon Creek neighbor, hunting partner and employee, testified at trial that Pomeroy told him that he had killed a mountain lion near Stryker or Whitefish. In addition, Franklin claimed he saw the mounted mountain lion in Pomeroy's home. Todd Jones is a friend of Franklin's and often hunted with Pomeroy. Jones testified at trial that Pomeroy told him that he shot the mountain lion out of season in the Whitefish area.

3

Game Warden Sergeant Mike Ottman of Montana Fish, Wildlife and Parks (FWP) testified that within 48 hours of killing a mountain lion, the hunter must report the kill to FWP and must bring the lion to FWP to have it "trophied" within 10 days. When trophying the lion, FWP checks the hunter's tag and the sex of the lion then sends the skull of the lion to the research lab where a tooth is pulled from the skull to determine the age of the lion. FWP keeps records of all hunters who trophy mountain lions. The records from 1991-93, produced at trial, revealed that Pomeroy had not trophied his lion in compliance with FWP standards.

Approximately two to three weeks into big game hunting season in 1994, Franklin and Pomeroy were driving on Lincoln Road when they spotted a white-tailed buck near the side of the road. Franklin, who was driving, testified that upon Pomeroy's request, he stopped in the middle of the road. Pomeroy then got out of the truck, sat in the middle of the road and shot the buck. The deer continued to run so Pomeroy shot it again, this time from the fence line. Franklin further testified that Pomeroy hit the deer again when he shot the second time and that the deer dropped along a creek. Pomeroy and Franklin loaded the deer into the truck and hung it at the construction site of a house they were building nearby.

During the 1994 hunting season, Franklin had a hunting camp on his land in Scully Gulch. The day after Thanksgiving, Franklin and Jones were hunting on adjacent ridges in the gulch when they heard a shot. Franklin testified that he looked through his binoculars at Jones and saw that Jones had not shot. Franklin further testified that the only other person

4

in the area was Pomeroy, who was retrieving his camper. As a result, Franklin assumed that Pomeroy took the shot. Franklin further testified that he later heard that Pomeroy shot a two-point buck.

Jones testified that after he heard the shot, he walked over to the kill site and found Pomeroy gutting a two-point mule deer buck. When Jones approached he said "Hey, I'm the game warden" to which he said Pomeroy's "eyes got big and freaked out." Jones said he then helped Pomeroy load the deer into the back of Pomeroy's camper. Pomeroy did not tag the deer.

The next day, November 26, 1994, Pomeroy's neighbor, Dave MaGee, recalls that he was looking for a calf that had escaped from his corral when he heard a shot from the adjacent Grady ranch. MaGee claims that he was curious about the shot so he waited outside. About ten minutes later, he saw Pomeroy with a rifle walking down the road towards Pomeroy's property. MaGee stated that in another ten to fifteen minutes Pomeroy drove back up the road toward the Grady ranch. MaGee then went inside his house and was watching the Grizzly football game for about thirty minutes when he saw Pomeroy drive back down the road and back his vehicle up to his shed.

MaGee still had not found the calf and was curious about what Pomeroy was doing on the Grady ranch so he followed Pomeroy's vehicle tracks up the road. MaGee testified that it had snowed the night before and there were only two sets of vehicle tracks on the road; thus, Pomeroy was the only one who had driven up the road that morning. The tracks led to

5

a fresh cow elk gut pile that was partially covered by branches. MaGee, who is a retired biologist, stated that he recognized a vaginal tract, fresh blood that was still pooled and liquid, and viscera around the intestine that was still fresh, all of which evidenced that the elk had been killed within the past hour or two.

At trial, Pomeroy admitted to walking and driving up the road to the Grady ranch on November 26th, and he admitted seeing the fresh elk gut pile, but he denied shooting an elk that day. Pomeroy claimed instead, that he had shot a coyote. MaGee testified that when he followed Pomeroy's tracks, he had not noticed any coyote tracks.

Additionally, Franklin and Jones testified that on the last weekend of the 1994 hunting season, Saturday, November 26, they noticed an elk hanging from Pomeroy's horse trailer. Pomeroy told Franklin that he got the elk behind his house, but said that if FWP asked, he would say he shot it near Townsend in an area where you are allowed to shoot cow elk during that time period. Pomeroy also showed Franklin and Jones another cow elk in the back of his Bronco. Pomeroy's elk tag was on one of the cow elk and his wife Renee's elk tag was on the other.

FWP Warden Ottman received a tip from a confidential informant on November 28, 1994, indicating that Pomeroy had illegally taken several big game animals that year, including two cow elk. FWP records revealed that Pomeroy was a newly licensed taxidermist. Licensed taxidermists are required by statute to keep written records of all

articles of wildlife in their possession and such records must be open to inspection by FWP at any reasonable time.

As a result of the tip, Wardens Ottman and Murphy decided to visit Pomeroy to examine his taxidermy records and investigate the tip. Ottman and Murphy arrived at Pomeroy's Canyon Creek home around 5:00 p.m. on November 28th. In the yard, they saw two cow elk hides, a spike bull elk skull and antlers, and two deer carcasses in the back of a truck. Ottman and Murphy then knocked on Pomeroy's door. When Pomeroy answered, they informed him that they wanted to review his taxidermy records and investigate a tip they had received regarding cow elk. While they waited for Pomeroy to retrieve the taxidermy records, they noticed that the living room contained many head mounts, and a mounted mountain lion. In addition, there were antlers of deer, elk and antelope and two sets of elk ivories on the coffee table. However, upon reviewing Pomeroy's taxidermy record book, they found that the only entry was for a bear hide belonging to Wally Blatherwick.

When Ottman and Murphy questioned Pomeroy about the cow elk hides they had seen outside, Pomeroy responded that he and Renee had shot the cow elk on November 25, 1994, at Duck Creek near Townsend. However, when Pomeroy tried to point out the area on a map he could not find it. Moreover, the area Pomeroy indicated, hunting district 892, is near Townsend but requires a special permit to shoot cow elk; a permit that Pomeroy did not have. Pomeroy showed the wardens his elk tag and Renee's elk tag which were validated for November 25th and pinned above the freezer. In addition, Ottman and Murphy saw

Pomeroy's antelope tags, a note from Blatherwick regarding hamburger meat that Pomeroy was processing and Renee's 1994 deer tag. Pomeroy told the wardens that Renee shot a two-point mule deer buck on the Grady ranch on their way home from shooting the two elk.

Pomeroy's wife, Renee, works at Helena Nursing Home. Her time card for November 25, 1994 revealed that she worked on that day from 7:36 a.m. to 4:01 p.m. Legal shooting hours on that day ended at 5:11 p.m. Warden Murphy testified that it was not possible for Renee to have left work, driven to Duck Creek and shot an elk within legal shooting hours.

The wardens asked Pomeroy if he killed a deer during the 1994 hunting season. He responded that he shot a five-point white-tailed buck on Lincoln Road and showed them the antlers. When asked to provide his deer tag, Pomeroy claimed that the dog ate it.

Finally, before the wardens left Pomeroy's house, Ottman set up an appointment for the next morning to have Pomeroy show him the kill site where the cow elk were shot. However, upon arriving at work the next morning, Ottman received a note to call Pomeroy who explained that he could not go to the kill site because his vehicle was not running properly, he did not have enough gas, and he had to pick up his son that afternoon.

On November 29, 1994, Ottman and Murphy obtained a search warrant for and conducted a search at Pomeroy's house. They found large quantities of hides and meat randomly placed inside and outside the home in unusual places such as underneath a baby's crib, under boards outside the home and in a horse trailer. The wardens testified that Pomeroy's freezer was three-quarters full of elk meat on November 28th, but on November

8

29th, it was nearly empty. In addition, Pomeroy's taxidermy record book had been altered and now reflected three entries. Renee arrived at the house about the time the wardens were concluding their search. Ottman questioned Renee and she denied shooting any wild game on November 25th or any other time. FWP conducted another search pursuant to a warrant on January 5, 1995, this time confiscating most of the evidence, including various hides, antlers, the mounted mountain lion, photos and the taxidermy record book.

Pomeroy was charged with eleven fish and wildlife violations in Justice Court. The Justice Court jury found Pomeroy guilty of all charges except one count of possessing an unlawfully killed cow elk and two counts of possessing unlawfully killed antelope. Upon appeal to the First Judicial District Court, Lewis and Clark County, the jury found Pomeroy guilty of one count of possession of unlawfully killed two-point mule deer buck, one count of possession of unlawfully killed five-point white-tailed buck, one count of possession of unlawfully killed cow elk, and one count of possession of unlawfully killed mountain lion, all in violation of § 87-3-112, MCA. In addition, the District Court jury found Pomeroy guilty of one count of using the deer tag of another and one count of using the elk license of another, both in violation of § 87-2-110, MCA, and one count of failure to keep accurate taxidermy records in violation of § 87-4-201, MCA. The District Court ordered Pomeroy's jail sentences to run consecutively resulting in a total jail time of 60 days and suspended his privileges to fish, hunt, trap and taxidermy for a period of 20 years. Pomeroy admits using

9

the deer tag of another and elk license of another, but appeals his other convictions and his sentence.

## Discussion

1. Was there sufficient evidence to support Pomeroy's convictions?

As a preliminary matter, the State correctly cited State v. Walsh (Mont. 1997), 931 P.2d 42, 45, 54 St.Rep. 64, 65, for the proposition that this Court would not consider an argument based upon the sufficiency of the evidence which is being raised for the first time on appeal. However, since the filing of the State's brief, this Court overruled Walsh in so far as it barred an appellant's claim of insufficiency of the evidence to support a verdict on appeal if the argument had not been raised in the district court. State v. Granby (Mont. 1997), 939 P.2d 1006, 1009, 54 St.Rep. 558, 560. Under Granby, this Court can review Pomeroy's insufficiency of the evidence claim even though he raises it for the first time on appeal.

Much of what Pomeroy characterizes as insufficient evidence is in fact a question of credibility of witnesses. When the jury is faced with conflicting testimony, as presented in this case, "[t]he jury is not bound to blindly accept defendant's version of the facts. It is free to pick and choose the evidence it wishes to believe." State v. Sorenson (1980), 190 Mont. 155, 170, 619 P.2d 1185, 1194. In addition, if events are capable of more than one interpretation, the jury may determine which is most reasonable. State v. Brogan (1993), 261 Mont. 79, 87, 862 P.2d 19, 24 (citing State v. Matson (1987), 227 Mont. 36, 39-40, 736 P.2d

10

971, 973). Finally, credibility of witnesses and weight of evidence is solely within the province of the jury and cannot be reviewed by this Court. Brogan, 862 P.2d at 24 (citing State v. Whitcher (1991), 248 Mont. 183, 188, 810 P.2d 751, 754). Clearly, the jury in this case found the State's witnesses more credible than Pomeroy.

## Mountain Lion

Pomeroy claims he purchased the mountain lion from Tony Ruseicki, a licensed taxidermist in Michigan. At trial, Mr. Ruseicki testified that he sold a mountain lion hide and skull to Pomeroy in 1989. Pomeroy further claims that two of the State's witnesses, Mr. and Mrs. Stephens, owners of Point of Rocks Restaurant, are not credible because they have a grudge against him for failing to help them acquire a gambling license. However, the record reveals sufficient evidence to support the jury's finding that Pomeroy shot the lion out of season. For example, several witnesses testified that Pomeroy admitted to them that he had shot the lion out of season near Stryker. Warden Ottman testified that the lion confiscated from Pomeroy's home had short hair that was not thick; thus, indicating that it was not a winter coat and probably was shot out of season. In addition, the mounted lion confiscated from Pomeroy's home was not missing the tooth that is normally pulled when FWP trophies the lion. Finally, FWP wardens found pictures of Pomeroy posing with a dead lion and Warden Roberts indicated that the vegetation in the photos was consistent with that in the Stryker area.

### Five-Point White-Tailed Buck

Section 87-3-101, MCA, makes any hunting of game animals from a public highway illegal. At trial, Pomeroy admitted shooting the buck on Lincoln Road, but claimed he shot from the embankment. Franklin, who was driving on the day Pomeroy shot the buck, testified that Pomeroy took the first shot from the road then, upon seeing the buck still running, took another shot from the fence line. Again, the jury was faced with which story they found more credible; an issue this Court does not review. Brogan, 862 P.2d at 24.

Pomeroy further argues in his brief that even if the jury believed Franklin's testimony that Pomeroy's first shot was from the road, the fatal shot, the second shot from the embankment, was legal. Thus, he contends the kill should be considered legal. The statute states that it is unlawful for anyone to "take, capture, shoot, kill, or attempt to take, capture, shoot or kill any game animal . . . on, from, or across any public highway . . . ." Section 87-3-101, MCA (1993). The statute distinguishes between "shooting" and "killing" and makes both acts illegal from a public highway. Therefore, Pomeroy's first shot from the road was illegal regardless of whether it killed the buck.

### Two-Point Mule Deer Buck

Pomeroy denies all of the events in Scully Gulch on November 25, 1994 and maintains that the mule deer buck confiscated by FWP belonged to Wally Blatherwick, one of Pomeroy's taxidermy customers. The jury was faced with several contradicting stories regarding the two-point mule deer buck including two by Pomeroy. Pomeroy claimed 1) that

12

it belonged to Blatherwick and Pomeroy was only butchering it; and 2) the deer was shot by his wife Renee on November 25th on their way home from shooting the cow elk near Townsend. The jury chose, instead, to believe the testimony of Franklin and Jones who stated that Pomeroy was the only other person in Scully Gulch on November 25th and that Pomeroy shot the deer and Jones helped him load it into Pomeroy's camper. There is sufficient evidence to support the jury's finding that Pomeroy unlawfully killed the two-point mule deer buck.

Failure to Keep Accurate Taxidermy Records

Section 87-4-201, MCA, requires a licensed taxidermist to "keep a written record of all the articles of wildlife in his possession or control." FWP provides new taxidermists with a record book to record possession of the wildlife parts and animals. The record book allows wardens to determine which animals belong to specific individuals and whether the animals have been lawfully taken.

The record reveals that on November 28th Pomeroy's record book contained only one entry (the bear belonging to Blatherwick), on November 29th when the wardens returned, Pomeroy had made two additional entries. However, FWP wardens confiscated numerous wildlife items from Pomeroy's residence that were not listed in Pomeroy's record book but were in his possession and control. Therefore, there is sufficient evidence that Pomeroy failed to comply with the statutory requirement to keep accurate taxidermy records.

13

## Cow Elk

Once again, although there was conflicting testimony, there was sufficient evidence to support the jury's finding of Pomeroy's guilt. MaGee, Pomeroy's neighbor and a retired biologist, testified that Pomeroy's tracks were the only ones leading to the gut pile and that the pile was very fresh. Additionally, he did not see any coyote tracks to corroborate Pomeroy's story. Moreover, Franklin testified that upon seeing a cow elk hanging from Pomeroy's horse trailer, Pomeroy told him he shot it behind his house and that if questioned about it, he would say he shot it near Townsend.

In fact, when questioned, Pomeroy stuck to his story and told Wardens Ottman and Murphy that he and Renee each shot a cow elk at Duck Creek near Townsend on November 25, 1994. However, Pomeroy was not able to identify the area on a map where a kill would have been legal with the type of elk license he had. In addition, Pomeroy later admitted to lying about Renee hunting with him on that day. Most importantly, FWP wardens found two cow elk hides in Pomeroy's possession, but Pomeroy was only able to produce one valid elk license. There was sufficient evidence to support the jury's finding that Pomeroy possessed an illegally killed cow elk.

2. Did the District Court err in allowing testimony regarding two cow elk when Pomeroy had been acquitted of one charge of possession in Justice Court?

Pomeroy claims that MaGee's testimony regarding the cow elk killed on Grady ranch should have been suppressed by the District Court. At trial and upon appeal, Pomeroy

14

maintained that MaGee's testimony related to the cow elk possession charge that Pomeroy was acquitted of in Justice Court. Pomeroy further claims that because he was acquitted of one count of possessing an unlawfully killed cow elk by the Justice Court jury, presentation of MaGee's testimony at the District Court level violated the Double Jeopardy Clause or, alternatively, the rule of collateral estoppel. At trial, Pomeroy's attorney made a motion in limine to exclude MaGee's testimony. The District Court, outside the presence of the jury, heard extensive arguments from the attorneys regarding the cow elk charges. The District Court admonished the jury that "in 1994, the defendant did have one elk that it has been decided was legally in his possession," denied the motion in limine, and allowed MaGee to testify.

Pomeroy failed to conclusively establish that the cow elk about which MaGee testified was the same cow elk Pomeroy was acquitted of possessing in Justice Court. The record reveals that, although Pomeroy possessed two cow elk, he had a valid permit for only one cow elk. Since the jury was properly instructed that Pomeroy lawfully possessed one of the two cow elk, there was no danger that the jury would convict him of illegally possessing both cow elk and thereby duplicate the possession charge for which he was acquitted in Justice Court. Accordingly, we hold that the District Court did not abuse its discretion in allowing testimony regarding two cow elk and that the verdict did not subject Pomeroy to double jeopardy.

15

3. Did the District Court abuse its discretion in sentencing Pomeroy?

Our review of a sentence is limited to the question of legality and a sentence is considered legal if it falls within the parameters provided by statute. Ford, 926 P.2d at 251. Moreover, trial judges are granted broad discretion to determine an appropriate punishment in the sentencing stage. Ford, 926 P.2d at 251. Pomeroy asserts that his sentence is improper because his crimes were not "violent or heinous or horrendous." He further asserts that it was inappropriate for the District Court to suspend his hunting, fishing and trapping privileges for 20 years. The record reveals that Pomeroy pled guilty to a fish and game offense in Colorado before moving to Montana. In addition, the District Court jury found Pomeroy guilty of seven fish and game offenses. Pomeroy's sentence for each count falls within the parameters of Title 87, MCA. The District Court did not abuse its discretion in sentencing Pomeroy.

Finally, Pomeroy requests that this Court order the State to return certain items which were confiscated and which relate to charges of which Pomeroy was acquitted. The District Court is in a better position to determine which items have already been returned, which remaining items should be returned and to resolve any disputes as to valuation of said items.

Affirmed and remanded to the District Court to address the return or valuation of confiscated items.

_W. William Leaphart_
Justice

16

We concur:

_____

_____

_____

_____
Justices

17

September 17, 1997

CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

STEVEN J. POMEROY
HCR 30 LOT D
CANYON CREEK MT 59633


HON. JOSEPH P. MAZUREK, ATTORNEY GENERAL
MICHAEL WELLENSTEIN, ASSISTANT
215 NORTH SANDERS
HELENA MT 59620

MIKE McGRATH, COUNTY ATTORNEY
MIKE MENAHAN, DEPUTY
228 BROADWAY
HELENA MT 59601


ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: *signature*
Deputy